Kareem Abdul JIHAAD a/k/a Mitchell X. Robinson, Jr., Plaintiff-Appellee Cross-Appellant,

v.

Joseph O'BRIEN,* Defendant-Appellant Cross-Appellee.

Nos. 79–1104, 79–1105.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1981.

Decided April 9, 1981.

---

* Norman A. Carlson, Director of the Bureau of Prisons, and H. S. Beall, Warden of FCI, Milan, were defendants below, but are not parties to this appeal.

Richard A. Rossman, U. S. Atty., L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., Earl Kaplan, Lawrence Lippe, Philip B. Heymann, Crim. Div., Sp. Litigation Dept., Dept. of Justice, Washington, D. C., for defendant-appellant cross-appellee.

Sheldon J. Stark, Detroit, Mich., for plaintiff-appellee cross-appellant.

Before EDWARDS, Chief Judge, LIVELY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

This is an appeal by a federal prison official from a judgment awarding damages to a prisoner in a *Bivens*[1] type action. The amended complaint contained a general charge of violations of the 1st, 5th, and 8th Amendments. For present purposes, the only claim of constitutional violation set forth with specificity in the amended complaint was the charge that the plaintiff was placed in disciplinary segregation for refusing to shave his beard, and that the order to shave infringed his right to the free exercise of religion and was contrary to a prison policy on inmate grooming. The opinion of the district court upon which the judgment was based found a violation with respect to the First Amendment free exercise claim only and that was the only constitutional issue argued on appeal.

## I.

When the plaintiff arrived at the Federal Correctional Institution (FCI) at Milan, Michigan in June 1975 he was wearing a beard. He shaved it without protest when ordered to do so for prison photographs. Sometime later, while still a prisoner at FCI Milan, he began to grow another beard. On August 5, 1975 the plaintiff was ordered by a staff officer to shave his beard and he refused to do so. On August 6 plaintiff was notified that he would be given a hearing before the Institution Discipline Committee (IDC) on charges that he had violated prison rules by refusing to obey the order of a staff member and failing to follow safety and sanitation regulations. Plaintiff appeared and testified at the IDC hearing. He was found guilty of refusing to follow an order and was placed in disciplinary segregation. He was released from segregation after seven days and eventually was transferred to another institution.

### A.

Plaintiff testified that he had been an atheist, but had become a Black Muslim while at the Federal Correctional Institution at Ashland, Kentucky. Before his transfer from Ashland to Milan he had embraced the Sunni Muslim sect of Islam. When first ordered to shave by the FCI Milan staff officer plaintiff told the officer that to do so would violate the tenets of his faith as a Sunni Muslim. At the IDC hearing he repeated this claim and relied on Bureau of Prisons Policy Statement 7300.-64A, then in effect, which provided in part:

**6. Mustaches and Beards**

Beards are not permitted, since they most readily compromise security because of the consequent rapid modification of appearance.

On those occasions where it has been demonstrated that religious beliefs proscribe shaving of beards, and the inmate had the beard on commitment, special allowances should be made.

He also stated that it was his understanding that there was an agreement that no punishment would be imposed on Sunni Muslims at FCI Milan for wearing beards until their status under the grooming regulation was clarified.

---

1. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a complaint for damages against federal agents for alleged violations of the Fourth Amendment stated a federal cause of action.

In *Yiamouyiannis v. Chemical Abstracts Service*, 521 F.2d 1392 (6th Cir. 1975), this court recognized a direct right of action under the *Bivens* rationale for alleged infringement of First Amendment rights.

The defendant Beall, warden at FCI Milan, testified in district court that he knew of no agreement to withhold punishment of Sunni Muslims for violation of the no-beard policy. Warden Beall also testified that when the Sunni Muslims at FCI Milan raised a question concerning application of the grooming regulation to them he had one of the Milan chaplains research the matter. The chaplain concluded that wearing a beard is not a requirement of the Sunni Muslim faith. The defendant O'Brien, Chairman of the IDC, testified that the determination by the chaplain was made prior to the hearing involving plaintiff, and that plaintiff was advised at the hearing of this determination. O'Brien also testified that the office of the general counsel of the Bureau of Prisons was contacted and it concurred in the chaplain's determination.

The plaintiff testified in district court that he had been wearing a "religious beard" before his arrival at Milan and that he shaved it for prison photographs because he was afraid of the consequences if he refused. He said that he felt guilty afterwards because he knew it was wrong to shave. On cross-examination he stated that although wearing a beard was required for him, he did not follow some of the other recommendations for Sunnis. This was consistent with his later testimony that he picked and chose which recommended Sunni Muslim practices to follow. He also testified that he was a member of a group of Sunnis for whom wearing a beard was recommended but not required. He testified at one point that he grew the beard because he thought he was entitled to under policy 7300.64A. Plaintiff testified that the defendant O'Brien told him that he, O'Brien, was running a prison and was not interested in the plaintiff's constitutional rights. O'Brien emphatically denied making this statement. O'Brien said he accepted the sincerity of the plaintiff's belief that wearing a beard was a requirement of his faith for him.

The defendant Carlson, Director of the Bureau of Prisons, testified that the "special allowances" provision of the policy statement was for the benefit of Amish and Orthodox Jewish prisoners, but that it should have been applied to members of other religions for whom not shaving was a religious requirement. The primary purpose of the no-beard policy was to prevent easy alteration of a prisoner's appearance in event of escape. The policy has subsequently been rescinded.

### B.

The district court rendered two opinions in this case. In the first, a published memorandum, the court denied the defendants' motion to dismiss the complaint and held that the plaintiff was entitled to a hearing. *See Jihaad v. Carlson*, 410 F.Supp. 1132 (E.D.Mich.1976). Following this ruling the plaintiff filed his amended complaint seeking damages of $1,000,000 ($500,000 compensatory and $500,000 punitive), costs and attorney fees. No injunctive or declaratory relief was sought. The answer of the defendants included an affirmative defense of good faith immunity. The district court then held two hearings, one to determine if the Sunni Muslim faith forbade shaving and a bench trial on the merits of plaintiff's claim and the defenses interposed. At the first hearing the plaintiff and a professor of Arabic and Islamic studies testified. It was at this hearing that plaintiff testified he felt wearing a beard was required for him but that he did not follow other recommended actions for Sunni Muslims. The testimony of the professor was that a Sunni cannot pick and choose among recommended actions, but would follow all of them.[2] For a Sunni, "it is a must to wear a beard." The other testimony referred to earlier in the opinion was received at the later hearing on the merits.

At the close of the plaintiff's case at the bench trial the district court dismissed Director Carlson and Warden Beall upon a

---

2. The witness testified that in the Islamic view, there are required actions and recommended actions. All Muslims must follow the required actions whereas Sunni Muslims—"traditionalists"—also adhere to recommended practices.

finding that they were not personally involved in the action of which plaintiff complains. The plaintiff has not appealed these dismissals. At the conclusion of the trial the District Judge announced his decision that the plaintiff's constitutional rights had been infringed, but that he was entitled only to "nominal damages." The court stated that the defendant O'Brien had erred in basing his decision upon a determination that Sunni Muslims are not absolutely required to wear beards. Once it was established that the plaintiff sincerely believed he had to wear a beard, the court stated, it was wrong to discipline him for doing so. In the course of his ruling, the District Judge stated that O'Brien did not act maliciously, but it was sufficient that he acted intentionally:

> I am not finding that Captain O'Brien maliciously intended to deprive the Plaintiff of a constitutional right.
>
> I find that Captain O'Brien did intend to deprive him of a constitutional right, since what he did was to order him to take off his beard. And if he didn't do that, he was to be placed in segregation, and he was placed in segregation. That was an intentional act on Mr. O'Brien's part.
>
> I find that intentional act was aimed at depriving Mr. Jihaad of his constitutional right to exercise his religious beliefs as he sincerely felt them to be. The policy of the prison did not proscribe beards if there was a finding as the regulation states it.
>
> I find that Captain O'Brien's conduct intentionally violated Mr. Jihaad's right to exercise his religious belief.

Subsequently the district court filed a "Supplemental Opinion" (unpublished) which incorporated and expanded upon his rulings from the bench. In this opinion the court found that O'Brien was not entitled to immunity from an action for damages on the basis of good faith, even though he had not acted maliciously:

> Although the Policy Statement as interpreted by the prison authorities and by O'Brien protects him from any claim that he acted *maliciously* in ordering plaintiff to shave, this does not mean that he acted without *intent* to deprive plaintiff of his constitutional rights. (Emphasis in original).

> \*　　\*　　\*　　\*　　\*　　\*

> Plaintiff's failure to prove defendant acted maliciously, therefore, does not render defendant immune from suit under *Bivens.*

The court also held that O'Brien could not claim good faith immunity on the ground that plaintiff's constitutional rights "in this regard" were so ill-defined that he could not have intended to violate those rights by enforcing prison policy. O'Brien should have been fully aware of the plaintiff's right to the free exercise of any religious belief he may choose "so long as he does not disrupt the prison community in doing so." In awarding damages of $700 ($100 for each day in segregation) the district court wrote:

> As stated earlier, O'Brien did not act maliciously or in bad faith in ordering plaintiff to shave his beard or face some form of discipline. However, I find that he did act in bad faith in meting out punishment by ordering plaintiff into disciplinary segregation when plaintiff refused to shave his beard. On this issue it is irrelevant that prison officials had determined that Sunni Muslims were not entitled to an exemption under the Policy Statement. In determining what form of punishment was appropriate in plaintiff's case, O'Brien was faced with two contradicting factors: First, he knew that if plaintiff obeyed the order to shave, plaintiff, as an individual, would be violating his religious principles; second, he believed that under the prison policy statement, plaintiff, as a member of a particularly religious sect, technically was not entitled to wear a beard while in prison. Faced with these facts O'Brien elected to subject plaintiff to the most severe form of punishment available—disciplinary segregation. This decision was not only imprudent, it was made with complete disregard for plaintiff's established constitutional rights. Thus, since plaintiff

has established that defendant meted out punishment in bad faith he is entitled to recover damages provided he can prove actual damages.

## II.

On appeal O'Brien argues that the district court lacked subject matter jurisdiction, that no infringement of constitutional rights was proven, and that even if his actions were improper he was entitled to either absolute or qualified immunity. The plaintiff filed a cross-appeal and contends here that the district court erred in awarding inadequate damages and in denying his request for attorney fees.

## A.

The defendant contends the district court did not have jurisdiction because the matter in controversy did not exceed "the sum or value of $10,000." 28 U.S.C. § 1331(a). However, the amount in controversy is measured by the complaint, not the verdict. There is no merit to defendant's contention. The defendant also maintains that he was entitled to absolute immunity as a quasi-judicial officer. We do not believe that a prison official who conducts an informal disciplinary hearing is in one of "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (footnote omitted); *see also G. M. Leasing Corp. v. United States*, 560 F.2d 1011 (10th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). Rather, such an official is covered by the general rule that "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer* [*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)] ...." 438 U.S. at 507, 98 S.Ct. at 2911. We reverse the judgment of the district court, however, upon our determination that the defendant established his right to qualified good faith immunity.

## B.

Any discussion of qualified official immunity should begin with a consideration of *Scheuer v. Rhodes, supra*. After discussing the reasons for the doctrine of official immunity, the Court stated:

> These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

416 U.S. at 247–48, 94 S.Ct. at 1692. *Scheuer* was an action against state officers under 42 U.S.C. § 1983, as were most of the decisions which have dealt with qualified immunity.

In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), several students who had been expelled from high school sought damages from school board members who had voted to expel them. Rejecting a claim of absolute immunity the Court concluded "immunity must be such that public school officials understand that action taken in good faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." 420 U.S. at 321, 95 S.Ct. at 1000. This "appropriate standard" was held to contain elements of both objective and subjective tests of good faith. The subjective test is satisfied if the school official believes he is doing right. The objective test requires that the official not act contrary to "settled, indisputable law ...." *Id.* There is no immunity from a claim for damages under § 1983 either where a school official knows

or reasonably should know that his official actions violate the constitutional rights of a student or where the action is taken "with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." 420 U.S. at 322, 95 S.Ct. at 1001. An official is not charged, however, "with predicting the future course of constitutional law." *Id.,* quoting from *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

Though *Wood* was written in terms of immunity of school board members only, its holding has been applied to other officials who exercise similar discretion. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), was a § 1983 action by a prisoner against state prison officials. The only issue considered by the Court was whether the plaintiff was entitled to relief for the negligent interference by subordinate officers with his outgoing mail. The defendants relied on official immunity. The Supreme Court agreed with the defendants that when the incidents concerning the plaintiff's mail occurred there was no clearly established right under the First Amendment which protected the mailing privileges of state prisoners. The cases relied upon by the plaintiff did not document the existence of a clearly established constitutional right in this regard. 434 U.S. at 565, 98 S.Ct. at 861. "As a matter of law, therefore, there was no basis for rejecting the immunity defense on the ground that petitioners knew or should have known that their alleged conduct violated a constitutional right." *Id.* The court further held that the immunity defense of the defendants should not have been overruled under the second, or subjective, branch of the *Wood* test. The defendants were charged with negligent interference with the plaintiff's mail. This implied that there was no intention to harm the plaintiff. Since this was so, the second ground under *Wood* for denying immunity, "malicious intent to harm," was not implicated in the negligence claim and the defense of immunity was upheld on the finding that the defendants "passed" the first, or objective, test described in *Wood.*

In *Butz v. Economou, supra,* the Supreme Court held that federal officials sued for damages in *Bivens*-type actions for alleged constitutional deprivations are entitled to the same qualified immunity accorded state officials sued for such acts pursuant to § 1983. Referring to its decision in *Navarette,* the Court wrote in *Economou:*

> We emphasized, however, that, at least in the absence of some showing of malice, an official would not be held liable in damages under § 1983 unless the constitutional right he was alleged to have violated was "clearly established" at the time of the violation.

438 U.S. at 498, 98 S.Ct. at 2906.

## C.

The district court held that O'Brien failed both tests for official immunity under *Wood.* In dealing with the objective test the district court held that the constitutional right to the free exercise of religion was so well defined that the defendant was required to recognize it. This holding misses the point of the *Wood* test by dealing only with the general right to free exercise of religion, rather than the particular right which the plaintiff sought to exercise. In the absence of malice, good faith immunity is available to a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act for which he inflicts punishment. This distinction between the general and the particular was defined in *Chapman v. Pickett,* 586 F.2d 22, 25 (7th Cir. 1978):

> One of the requirements of this test is that the constitutional right allegedly infringed by the defendants must have been clearly established at the time of the challenged conduct. The general First Amendment right of a prisoner to be free from punishment or discrimination on account of his religious faith may be said to be clear. *Cooper v. Pate,* 382 F.2d 518, 521 (7th Cir. 1967). Under *Procunier v. Navarette, supra,* however, it appears that the right in question must have been

established in a more particularized way to meet the *Wood* test.

The plaintiff has cited no case decided prior to August 12, 1975, and we have found none, which held that prisoners had a constitutional right to wear beards on religious grounds. In *Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975), the court held that an American Indian state prisoner had a First Amendment right to wear long braided hair. This result was reached by balancing the prisoner's interest in the free exercise of his religion against the interests of the prison officials in administrative efficiency. However, this decision was not issued by the court of appeals until nearly one month after the hearing was held in the present case. Still later it was decided in *Monroe v. Bombard*, 422 F.Supp. 211 (S.D.N.Y.1976), that a state prison's "no-beard" policy violated the right of Sunni Muslims to the free exercise of their religion. Again, at a later date, a requirement that federal prisoners be clean shaven was held to violate the constitutional rights of Orthodox Jewish prisoners. *Moskowitz v. Wilkinson*, 432 F.Supp. 947 (D.Conn.1977).

■ At the time of plaintiff's hearing and punishment there was no "clearly established" constitutional right of prisoners to wear beards on religious grounds. Indeed, to this date, neither the Supreme Court nor any federal court of appeals has so held. Under these circumstances the district court erred as a matter of law in denying O'Brien immunity under the first, objective test of *Wood. Navarette, supra*, 434 U.S. at 565, 98 S.Ct. at 861; *see Wolfel v. Sanborn*, 555 F.2d 583, 592 (6th Cir. 1977). O'Brien enforced a regulation which was valid on its face and offended no "clearly established" constitutional right. Because the question of its application to Sunni Muslims had been previously raised by another prisoner, Warden Beall and O'Brien had sought advice from a chaplain and from counsel for the Bureau of Prisons on this very issue. The indicia of good faith are abundant, and O'Brien was entitled to official immunity insofar as the objective test of *Wood* is concerned.

**D.**

■ Though the district court repeatedly found that O'Brien did not act maliciously in ordering Jihaad to shave or face punishment, the court denied immunity under the subjective test of *Wood* because O'Brien acted "intentionally." This finding is somewhat clouded by the later statement that, though O'Brien did not act maliciously or in bad faith in ordering Jihaad to shave, he did act in bad faith in subjecting him to the most severe punishment available. There was no proof that seven days' disciplinary segregation for refusal to follow an order, a "major violation" under Bureau of Prisons Policy, was cruel or unusual punishment. The severity of the punishment furnished no basis of liability in this action which sought damages solely for alleged constitutional violations.

■ When read in context the district court's reference to bad faith in meting out punishment appears to be based on the erroneous failure to distinguish between the general right to free exercise of religion and the particular claim asserted by the plaintiff. The court, in concluding that bad faith was involved, assumed something that as a matter of law was not so—that it had been clearly established that Sunni Muslim prisoners had a constitutional right to wear beards. Our examination of the record convinces us that the finding that O'Brien acted without malicious intention is fully supported. The district court's conclusion that, in spite of this finding, O'Brien should be denied immunity because he acted intentionally in placing Jihaad in disciplinary segregation is contrary to law. The subjective test as stated in *Wood* is, ". . . or if he took the action with the *malicious intention* to cause a deprivation of constitutional rights or other injury to the student." 420 U.S. at 322, 95 S.Ct. at 1001 (emphasis added). The requirement of "malicious intention" was recognized in *Navarette, supra*, 434 U.S. at 566, 98 S.Ct. at 862 and *Economou, supra*, 438 U.S. at 498, 98 S.Ct. at 2906. The district court held that *Navarette* only requires an intentional act,

that malice is not necessary to strip an official of immunity. This is a misreading of the opinion in that case. The language relied upon was used by the Court to explain why the subjective test of *Wood* was not involved. *Navarette* concerned a claim of negligence only, and this eliminated any consideration of intent, malicious or otherwise. *Navarette* in no way weakened the requirement that

> ... in the absence of some showing of malice, an official would not be held liable ... unless the constitutional right he was alleged to have violated was "clearly established" at the time of the violation.

*Butz v. Economou, supra,* 438 U.S. at 498, 98 S.Ct. at 2906.

**E.**

■ The defendants pled official immunity as an affirmative defense. It was not contested that O'Brien was acting within the scope of his discretionary authority in conducting the hearing. This was sufficient to establish a prima facie case of entitlement. The burden of proving that O'Brien was not entitled to official immunity was then on the plaintiff. The plaintiff failed to show that the defendant was not entitled to immunity under one of the tests set forth in *Wood. See Douthit v. Jones,* 619 F.2d 527, 534 (5th Cir. 1980). The defendant O'Brien was entitled to judgment under the doctrine of qualified official immunity.

**III.**

■ We are not required to decide in this case whether Jihaad's First Amend-

ment rights were actually violated by the order to shave or the punishment for refusing to obey since we have held that the defendant was entitled to judgment on the basis of immunity as a matter of law.[3] The district court failed to make a proper analysis of the First Amendment issue, and since recovery is precluded by immunity, there would be no purpose in remanding for a determination of the validity of the constitutional claim. The district court made no explicit finding with respect to the legitimacy or substantiality of the reasons given by Director Carlson for the "no-beard" policy.[4] Instead, the court assumed that Jihaad's sincere belief that it was necessary for him to wear a beard was sufficient to make any requirement that he shave unconstitutional. This is not so. It is settled that a prisoner does not have an absolute right to practice his religion in accord with his desires. The needs of the institution and penological objectives must be balanced against the right of the individual prisoner. *See Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Such a balancing was performed by the courts in *Teterud, supra, Monroe, supra,* and *Moskowitz, supra,* and in other cases where individual rights have been found more substantial than the institutional interests asserted as the basis for restricting those rights. *E. g., Kahane v. Carlson,* 527 F.2d 492, 495–96 (2d Cir. 1975); *St. Claire v. Cuyler,* 481 F.Supp. 732, 738–39 (E.D.Pa. 1979).[5] As stated, the district court made

---

3. *See Navarette, supra,* 434 U.S. at 565, n. 13, 98 S.Ct. at 861, n. 13.

4. In finding an intentional constitutional violation, the district court appears to have misconstrued Policy Statement 7300.64A. The court stated that the policy of the prison did not proscribe beards "if there was a finding as the regulation states it." Read in conjunction with the district court's opinion regarding constitutional violation, it appears that the court interpreted the regulation as permitting beards upon a showing that a prisoner's own personal beliefs forbade shaving. However, Director Carlson testified that this statement of "special allowances" was designed for members of par-

ticular sects, Amish and Orthodox Jews, for whom there was an established requirement of maintaining beards. The defendant O'Brien did not violate this policy by basing his order to the plaintiff upon a good faith determination that the religious beliefs of Sunni Muslims do not proscribe the shaving of beards.

5. The district court judgment in *St. Claire v. Cuyler,* was reversed on appeal. *St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir. 1980). In its opinion, speaking through Judge Aldisert, the court of appeals reviewed the decisions requiring a "mutual accommodation" between the First Amendment rights of prisoners and institutional needs. 634 F.2d at 112–15.

no attempt to balance the competing interests, and we should not attempt to do so in the first instance.

The judgment of the district court is reversed with directions to dismiss the complaint. The cross-appeal is dismissed. Each party will pay his costs on appeal.