Clovis Carl GREEN, Jr., Plaintiff,

v.

Carl WHITE, etc., Defendant.

No. 78–1144C(2).

United States District Court,
E. D. Missouri, E. D.

Aug. 10, 1981.

P. Terence Crebs, St. Louis, Mo., for plaintiff.

Steven W. Garrett, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Clovis Carl Green, Jr., the spiritual and litigational leader of the Human Awareness Life Church[1] has had the privilege of receiving the "evidentiary hearing" which the Eighth Circuit Court of Appeals directed to be held. *Green v. White*, 605 F.2d 376 (8th Cir. 1979) (*Green* I); *Green v. White*, 628 F.2d 1126 (8th Cir. 1980) (*Green* II). And once again this Court is constrained to dismiss this lawsuit, as frivolous, as malicious, and as totally lacking in evidentiary support. See Orders of October 28, 1978, April 24, 1980, and June 18, 1980.

Plaintiff initially brought this lawsuit as a class action on October 24, 1978, ostensibly for the purpose of requiring the Missouri Training Center for Men in Moberly, Missouri, to recognize his "religion". Plaintiff named Carl White, the Superintendent of M.T.C.M., as defendant in this lawsuit. The Eighth Circuit, subsequently approved this Court's dismissal of plaintiff's class action allegation; however, several of plaintiff's individual claims against defendant are still in dispute. Plaintiff seeks declaratory and injunctive relief, as well as one million dollars ($1,000,000.00) in damages, a sum he testified is fair compensation for the horrible wrongs inflicted upon him during the five weeks he was confined in March and April 1976. Plaintiff claims that during his brief stay at Moberly in 1976 defendant denied him his constitutional right to freely practice his religion, as guaranteed by the First Amendment. Plaintiff asserts that prison officials failed to provide him with conjugal visits, banquets on designated church holidays, payment for his services as chaplain of his church, the ability to have long hair and a beard, and finally the right to hold church services, bible study classes, or to distribute the church newspaper. In addition, plaintiff claimed that prison officials denied him access to Moberly as a full-time state-paid minister of his church upon his release from custody.

This Court sua sponte dismissed this action as frivolous, Order of October 28, 1978: the Court of Appeals subsequently reversed this dismissal. *Green* I. The Eighth Circuit found certain of plaintiff's claims to be non-frivolous, and ordered an evidentiary hearing thereon. Upon remand, this Court reviewed recent decisions in district and appellate courts across this country which recognized the malicious and abusive nature of plaintiff's litigation practices, and ordered plaintiff to show cause why this action too should not be dismissed as malicious. Order of April 24, 1980. As a result of plaintiff's failure to meet this burden this Court again dismissed plaintiff's complaint. Order of June 18, 1980. The Eighth Circuit again reversed, *Green* II, and ordered an "evidentiary hearing" on certain issues.

### I.

■ Upon remand this case was set for trial. Shortly before the date for trial, defendant filed a motion for summary judgment. Defendant premises his motion on a qualified immunity that is warranted by his official position. Pursuant to 42 U.S.C. § 1983, prison officials are entitled to qualified immunity in actions brought by prisoners. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Jihaad v. O'Brien*, 645 F.2d 556 (6th Cir.

---

1. The Human Awareness Life Church is not to be confused with the Universal Life Church, from which the HALC split over three years ago.

April 9, 1981); *Chapman v. Pickett*, 586 F.2d 22 (7th Cir. 1978). A plaintiff may recover damages only if he or she can show that the official acted in bad faith or that the prison officials took action that they knew or should have known violated the prisoner's constitutional rights. *Procunier*, supra; *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Injunctive relief is inappropriate in this case because plaintiff is no longer in defendant's custody, *Wycoff v. Brewer*, 572 F.2d 1260 (8th Cir. 1978). Therefore, if plaintiff's claim for damages is barred by defendant's qualified immunity, this cause must be dismissed.

According to the mandate of the Eighth Circuit, plaintiff has been brought to this district pursuant to a writ of habeas corpus ad testificandum for purposes of the trial. An evidentiary hearing was held and plaintiff was given the opportunity to present any evidence he might have to counter defendant's assertion that he acted in good faith.

The evidence presented showed that there was serious dispute as to the events which occurred during plaintiff's five-week stay at M.T.C.M. in 1976. Defendant asserted that plaintiff was free to hold bible study classes or church services whenever he wished; plaintiff said that he was instructed otherwise. Defendant claimed that prison officials allowed plaintiff to distribute his church newspaper as long as it did not incite violence among the inmates. Plaintiff argues that prison officials prohibited the distribution of his church literature. Defendant said plaintiff never personally discussed with him his demands or grievances; plaintiff claims he did have discussions with the Warden.

Despite the existence of contradictory evidence concerning the events at Moberly prison during plaintiff's confinement, plaintiff failed to prove that defendant did not act in good faith. As defendant benefits from a qualified immunity, it is essential that plaintiff make a showing that defendant acted with malice or with an unexcused ignorance of plaintiff's rights. When plaintiff came to M.T.C.M. in early 1976, his reputation preceded him, and defendant as superintendent of M.T.C.M. was well aware of that reputation. In addition, plaintiff did not add to his own credibility when he demanded that prison officials provide him with conjugal visits, banquets, and payment as a chaplain, among several other requests. Defendant responded in good faith and proceeded in the same manner that any other responsible prison official would have proceeded; he denied several of these requests. Plaintiff has not presented credible evidence that would convince this Court that defendant should have responded otherwise. It is clear that defendant believed at the time, and still believes, that the HALC is a sham and bogus religion concocted by plaintiff for the sole purpose of extracting from prison officials privileges not available to the general prison population. It is this Court's view, until such time as plaintiff obtains judicial approval of his "religion," it would have been irresponsible for defendant to have granted the requests of plaintiff at the time of his imprisonment at Moberly.

It has already been shown that plaintiff failed to prove that defendant acted in bad faith. Therefore, it is the conclusion of this Court that defendant did not maliciously intend to deprive plaintiff of his constitutional rights. However, the issue remains as to whether defendant Carl White deprived plaintiff of his First Amendment rights in denying plaintiff's requests, and if so, whether he should have known that his actions might have this effect. At the time of the events in question in this case, the right of prisoners to exercise their First Amendment rights was well recognized. However, it does not necessarily follow that plaintiff's beliefs constituted a religion under the First Amendment, or that defendant denied the plaintiff the ability to exercise his religion in violation of the Constitution by denying him conjugal visits, banquets, or the ability to distribute his newspaper. In light of plaintiff's reputation and his actions a responsible person would very well conclude his religion was no more than

a sham. Defendant's actions must be evaluated in light of the specific requests involved, not in light of a general, omnipresent First Amendment right to the exercise of one's religion. *Procunier*, supra; *Jihaad*, supra, 645 F.2d at 562; *Chapman*, supra, 586 F.2d at 25.

■ There has never been and, hopefully, never will be any "clearly established" constitutional right, *Procunier*, supra, 434 U.S. at 564, 98 S.Ct. at 861, for a prisoner to devise a religion in order to obtain concessions from the prison officials. It is clear from the evidence that defendant believed plaintiff's religion to be a sham and that it would have been irresponsible for him to allow plaintiff special privileges in the name of the First Amendment. Accordingly this Court finds that plaintiff's First Amendment rights were not violated by the actions of prison officials at Moberly. Defendant's motion for summary judgment will be granted and this case will be dismissed.

## II.

■ Even were there some factual dispute as to defendant's good faith defense, this Court would be constrained to again dismiss this lawsuit as frivolous and malicious, a procedure which has twice failed to pass muster with the Court of Appeals. Plaintiff has made a mockery of this Court and the courts in general. He has made a travesty of this Country's cherished First Amendment rights. He has so abused and manipulated the court system that sensible people must ask why his tactics are endured by the courts.

Were the record of this case now the same as it was at the time of the second remand, this Court would obviously be failing to follow the mandate of the Court of Appeals by dismissing this suit again as frivolous and malicious. Events since that time, however, have made it indisputedly clear that such dismissal is justified. In fact, this Court would be remiss if it permitted this charade to go any longer. Certainly, our system of jurisprudence is not powerless to put a halt to practices such as those followed by plaintiff.

After the second remand of this case, an attorney was appointed to represent plaintiff; plaintiff had sufficient time prior to his hearing to allow him to discuss the case with his attorney. Plaintiff still was unable to offer any evidence to dispute defendant's claim of good faith. This further substantiates Judge Hunter's conclusion that "in virtually every instance in which plaintiff's claims have appeared colorably valid on the face of his pleadings, an evidentiary probing of those claims has revealed total insubstantiality." *Green v. Camper*, 477 F.Supp. 758, 770 (W.D.Mo. 1979).

When plaintiff was transferred to this district, he brought along nine boxes of legal papers. Though he was only to be in this district for a short time, he demanded continuous access to his papers, to a law library, and made many petty demands of his jailers. Whenever his demands were not immediately met, he threatened to sue everyone involved, (a threat which obviously can not be taken lightly in view of plaintiff's history). In fact, he filed several suits in the one week while he was present for this case.[2] His appointed attorney became his mail boy, and received stacks of legal mail daily for plaintiff from courts and prison officials all over the country.

The time and resources expended by state and federal officials in coping with plaintiff's litigation barrage is enormous. At the evidentiary hearing held herein, plaintiff gloated over this fact. He proudly announced that he has suits pending in every United States Court of Appeals and that he has sued every prison system in the country. He estimated that he has filed close to one thousand lawsuits on his own behalf and on behalf of others in the past ten years.

---

**2.** Pending a ruling by this Court on this motion for summary judgment, plaintiff has filed another suit in the United States District Court for the District of Vermont. Plaintiff alleges that correctional officials in Vermont are interfering with the practice of his religion.

His own testimony and demeanor at the evidentiary hearing evidenced the complete and total insincerity of plaintiff and his litigious pursuits. Regardless of the strength of his "religious" beliefs, plaintiff testified that he would dismiss every suit, with prejudice, that he has now pending in return for his release from custody. In so testifying, plaintiff fully corroborated the incisive observation of Judge Hunter, made almost two years ago.

> Petitioner is of the apparent mind that by flooding the Court with litigation and rendering it unable to administer its docket because of the sheer volume of such frivolous and malicious filings he will cause the Court to order his release from custody.

*Green v. Camper,* supra at 759.

Finally, and most importantly, plaintiff's demeanor in court evidenced his insincerity. It was readily apparent to any objective observer that he viewed the proceedings in this Court as a joke. Plaintiff is obviously fully aware that he can tie up the judicial resources of this country, if courts indulge his claims of constitutional violations. Plaintiff also recognizes that a blind adherence to the principles of "liberal construction" advocated by some courts, will result in the avoidance of dismissal of his cases until the latter stages of litigation.

The issue is whether our courts are so helpless that they must accept pleadings from this plaintiff whose abuse of process has been judicially noticed. *Green v. White,* 616 F.2d 1054 (8th Cir. 1980). The attempt to enjoin Green has failed, similarly the requirement that he pay court costs has been unavailing. Unfortunately this abuse of the judicial system continues. Thus, in this case, we have another in a myriad of court decisions relating to Clovis Carl Green. And of course, this opinion will be followed by another appeal and another appellate decision. Unfortunately this process will continue until either Green is released eventually from incarceration or until our judicial system institutes an intelligent and fair procedure which will protect its integrity and its citizenship from plaintiffs like Clovis Carl Green, Jr.

Accordingly, defendant's motion for summary judgment of plaintiff's complaint be and is granted due to plaintiff's failure to provide this Court with evidence that defendant acted in bad faith. In addition, this suit be and is dismissed due to the frivolous and malicious nature of this litigation.