**Lawrence William SHELLY, Plaintiff,**

v.

**Perry M. JOHNSON, Jack Bergman, Marjorie Vanochten, William O'Connor and Jerry Sherman, Defendants.**

**No. M84–52 CA.**

United States District Court,
W.D. Michigan, N.D.

Aug. 14, 1987.

Lawrence William Shelly, in pro. per.

Chester S. Sugierski, Jr., Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION

HILLMAN, Chief Judge.

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the Michigan Department of Corrections and at the time suit was filed was an inmate at the Michigan Intensive Program Center (MIPC) in Marquette, Michigan.[1]

Defendants include Perry Johnson, former director of the Michigan Department of Corrections, Jack Bergman, superintendent at the MIPC, Marjorie Vanochten, the hearing administrator for the department, Officer William O'Connor and Hearing Officer Jerry Sherman. The latter two defendants were added by order of the court subsequent to the filing of the original complaint on motion of the plaintiff, based on the allegations against them contained in the original complaint.

Plaintiff alleges that he has been the subject of false misconduct reports and that the senior corrections officials failed to take action after being made aware of such false reports. He also alleges that he has been subjected to harassment following his report of the false misconduct reports.

Defendants filed a motion for summary judgment with a brief and affidavits in support in early April, 1987. No response to the motion has been filed. W.D.Mich.R. 29(a).

To warrant summary judgment, the moving party bears the burden of establishing the nonexistence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse*, 527 F.2d 1008 (6th Cir.1976). In determining whether there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). If a disputed question of fact remains, the motion for summary judgment must be denied. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). In making this determination, the court must make reference to the entire record and all well-pleaded allegations are to be accepted as true. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (1975). If no genuine issue as to any material fact is established, and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. *Irwin v. U.S.*, 558 F.2d 249 (6th Cir.1977).

Rule 56(e) also provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

### Immunity of Hearing Officer

Defendants assert that hearings officer Jerry Sherman is immune from any claim

---

1. Plaintiff has been transferred several t'mes since this action was filed, and therefore has already obtained a portion of the relief he sought, namely a transfer to another institution to remove him from what he alleged to be a life threatening situation.

for damages since the only allegation contained in the complaint against him alleges that he "refuses to recognize prisoner rights." A review of the complaint shows that all references to defendant Sherman relate to his actions in his capacity as a hearing officer.

■ A present-day hearing officer in the Michigan Department of Corrections is protected from immunity in damages under the doctrine of absolute judicial immunity. *Jordan v. Sherman*, M86–71 CA (W.D. Mich. November 25, 1986). This issue was extensively considered in *Jordan*, substantial portions of which are adopted here.

The immunity of hearing officers has not always been clear. In *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the court held that the members of a federal prison discipline committee, who hear cases in which inmates are charged with infractions of institutional rules, are entitled only to qualified, rather than absolute, immunity from suits alleging that they have violated prisoners' constitutional rights. The court emphasized that the several factors mentioned in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) as characteristic of absolute judicial immunity were absent. The court indicated that the members of the discipline committee were not professional hearing officers as, for example, are administrative law judges; that the committee's function was not a classic adjudicatory one; that committee members did not possess the independence ascribed to members of the judiciary; that they were just prison employees, subordinate to the warden; that they were under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employees; and that the committee simply was not a neutral and detached body.

These factors are clearly not present in the case of prison hearing officers under Michigan law. The position of Michigan prison hearing officers and their powers and duties are set forth in M.C.L. §§ 791.-251 through 791.255, M.S.A. §§ 28.-2320(51)–28.2320(55). These statutory provisions indicate that the hearing officers are in fact professional hearing officers in the nature of administrative law judges. They are required to be attorneys and they are under the direction and supervision of a special hearings division in the Michigan Department of Corrections. M.C.L. § 791.251, M.S.A. § 28.2320(51). They are not simply prison employees subordinate to the prison warden, as in the case of the discipline committee members in *Cleavinger, supra*. Their adjudicatory functions are spelled out at length in the statute. Their duties with respect to testimony of witnesses and admission of evidence are delineated in detail. They are subject to disqualification at the request of an inmate upon a showing of bias or other valid reasons. Their decisions must be in writing and must include findings of fact and the underlying evidence. M.C.L. § 791.252, M.S.A. § 28.2320(52). Provision is made for rehearings, as well as for judicial review in the Michigan courts, M.C.L. §§ 791.254, 791.255, M.S.A. §§ 28.2320(54), 28.2320(55).

Thus, unlike the members of the discipline committee in *Cleavinger, supra*, the Michigan prison hearing officer is an attorney especially appointed to conduct prison disciplinary hearings as a full time judicial officer, wholly independent of the warden and other prison officials in the prison in which he conducts his hearings. He is guided by strict statutory procedural rules and his decision is subject to appellate review in the Michigan courts. His role for all practical purposes is similar to that of an administrative law judge and as such he should be entitled to absolute judicial immunity for the very reasons recognized by the court in *Butz v. Economou, supra*, 438 U.S. at 508–514, 98 S.Ct. at 2911–2915.[2]

The role of the prison hearing officer under the Michigan statute was thoroughly discussed in *Boles v. Bush*, No. 82–71552

---

**2.** *Butz* involved a *Bivens* constitutional tor' action against federal officials. Nevertheless, since § 1983 immunity analysis is identical to *Bivens* immunity, *Butz* is an applicable precedent in the present case. See *Butz, supra*, 438 U.S. at 504, 98 S.Ct. at 2909–2910.

(E.D.Mich. June 28, 1983). District Judge Ralph M. Freeman in a well-reasoned opinion concluded that a hearing officer of the Michigan Department of Corrections is entitled to absolute immunity for liability under 42 U.S.C. § 1983 for acts committed in the performance of his duties in a prison disciplinary hearing. Judge Freeman reached this conclusion after analyzing both the *Butz* decision and the Michigan statutes covering prison hearing officers. Judge Freeman stated:

> Administration of the hearings process is provided for by statute. *Mich.Com.Law Ann.* §§ 791.251–.255. "The hearings division [is] responsible for each prisoner hearing which the [Department of Corrections] conduct which may result in the loss of a prisoner of either a right or significant privilege." *Id.* § 791.251(2). The safeguards built into the hearing process by statute in Michigan parallel the safeguards built into federal agency adjudication by the Administrative Procedures Act. The proceedings are adversary in nature. *Id.* § 791.252. The proceedings are before an impartial officer who is subject to disqualification for bias. *Id.* § 791.252(i), (j). A party is entitled to "present evidence and oral and written arguments on issues of fact." *Id.* § 791.252(d). A prisoner cannot directly cross-examine a witness but can submit written questions to the hearings officer to be asked of the witness and can offer rebuttal evidence. *Id.* § 791.252(e). "If the hearings officer does not present the questions to the witness or witnesses, the reason for the decision ... shall be entered into the record." *Id.; see also id.* § 791.252(g), (h). The parties are entitled to a final decision in writing or on the record which shall include findings of fact, with the "final decision [being] made on the basis of a preponderance of evidence." *Id.* § 791.252(k). Michigan law also provides for a "rehearing," *id.* § 791.254, and judicial review, *id.* § 791.255, *citing id.* §§ 24.301–.306.

Based on a review of the administrative hearings procedure set up for prisoner hearings by statute, it is apparent that a hearings officer in the Michigan Department of Corrections is "functionally comparable" to a judge. Thus, a hearings officer is entitled to absolute immunity from damages liability for his or her quasi-judicial acts. Such immunity is essential to preserve the independence which judicial and quasi-judicial officers must enjoy to properly discharge their duties.[5]

[5] Judge Freeman properly distinguished *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981), noting that there was no review in that case of the hearing procedure or the position of the prison official involved; the hearing in *Jihaad* was "informal," rather than "formal" as in the instant case; and there was no provision for review of the hearing procedure.

The Supreme Court's reasoning and analysis in *Cleavinger,* as well as Judge Freeman's decision in *Boles,* as quoted above, require the conclusion that a Michigan prison hearing officer enjoys absolute immunity in the performance of the functions described in the present complaint.

At first blush, *King v. Wells,* 760 F.2d 89 (6th Cir.1985) would also seem to argue against immunity. *King* was a Sixth Circuit decision, and dealt with a Michigan prison hearing officer. The decision states that "it is the law of this Circuit that prison officials who conduct administrative hearings are entitled only to qualified immunity." 760 F.2d at 94. However, in *King,* the court dealt with a hearing officer who conducted a disciplinary hearing in *1977,* some two years before the creation of the present system of hearing officers, such as defendant Sherman, who operate in the nature of administrative law judges as discussed in detail above. The present Hearings Division, which established a separate and autonomous body of hearing officers and defined procedural safeguards for prison misconduct hearings, was created by the Michigan legislature in 1979. Public Acts 1979, Act No. 140; M.C.L. §§ 791.251–791.255, M.S.A. §§ 28.2320(51)–28.2320(55).

Prior to 1979, Michigan hearing officers, like the hearing officer in *King* and in *Cleavinger v. Saxner, supra,* were prison officials on the warden's staff "temporarily diverted from their usual duties" and "di-

rect subordinates of the warden who reviews their decision." *Cleavinger v. Saxner, supra,* 106 S.Ct. at 502. The Sixth Circuit understandably refused to extend absolute judicial immunity to such hearing officers, as indicated by its decisions in *King, supra,* and *Jibaad v. O'Brien, supra.* However, the present Michigan hearing officer, unlike the pre–1979 hearing officer, is for the reasons set forth above and by Judge Freeman in *Boles v. Bush, supra,* an independent professional judicial officer having the characteristics and functions described in *Butz v. Economou, supra,* as entitling such officer to absolute judicial immunity in order to properly discharge his duties.

### False Misconduct Reports

■ Plaintiff contends that some of the misconduct reports which resulted in subsequent hearings were false. Federal district courts, of course, do not sit as appellate courts to review the factual findings of hearing officers in prison misconduct hearings. To the extent that there was a dispute as to the factual circumstances surrounding any given incident, it was the function of the hearing officer, not this court, to resolve it. Section 1983 does not extend to plaintiff a right to relitigate in federal court evidentiary questions arising in administrative disciplinary proceedings. See *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ This court, in fact, has had the opportunity to review the various records of the disciplinary proceedings which were attached to an affidavit submitted by one of the defendants. Since there was ample evidence contained in these reports to support the hearing officers' decisions, plaintiff's bald conclusory claim to the contrary notwithstanding, no constitutional violation is presented. *McCrae v. Hankins,* 720 F.2d 863, 868 (5th Cir.1983); *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974).

### Defendants' Awareness of Corrupt Practices

Plaintiff also maintains that the senior corrections officials named as defendants in this action have failed to take appropriate action after being made aware of the "corrupt practice's" in their respective departments and divisions, although plaintiff does not delineate in any detail what these alleged practices were.

■ The uncontroverted affidavits of the defendants establish that there is no basis in fact for these allegations. Defendant Vanochten, Hearing Administrator for the department, states that a search of the records of the Hearings Division, and plaintiff's central office file, reveals that the only correspondence which has been received by the Hearings Division from the plaintiff are four requests for rehearing, filed pursuant to M.C.L. § 791.254. These requests are as follows:

A. A request for rehearing received December 19, 1983 for the major misconduct of Threatening Behavior, which the plaintiff was found guilty of at a hearing held on December 12, 1983. Plaintiff had threatened to use a razor blade on a female officer.

B. A request for rehearing received December 19, 1983 for the major misconduct of Possession of Dangerous Contraband, which plaintiff was found guilty of at a hearing held on December 7, 1983. Plaintiff was found to have been in possession of a razor blade.

C. A request for rehearing received January 11, 1984 for the major misconduct of Possession of Dangerous Contraband, which the plaintiff was found guilty of at a hearing held on December 22, 1983. Plaintiff had threatened to kill defendant O'Connor.

D. A request for rehearing received January 19, 1984 for the major misconduct violation of Sexual Misconduct and Threatening Behavior, which the plaintiff was found guilty of at a hearing held on January 11, 1984. Plaintiff had again threatened to kill defendant O'Connor.

A review of these records, attached to defendant's affidavit, shows them to contain nothing more than the normal hearing documents. Vanochten stated in her affidavit that at the time of making her statement she had been unable due to unavoidable delays created by a staff shortage, to personally review these requests for rehearing.

Superintendent Bergman's affidavit points out that plaintiff Shelly was entitled to present his allegations of staff misconduct at the time each of his cases was heard by a hearing officer. He also points out that there is an appeals procedure available to inmates who do not agree with misconduct hearing findings and that plaintiff did not avail himself of that procedure.

Bergman also notes that following one particular allegation by plaintiff, against Officer O'Connor, that the latter allegedly pointed a pistol at him and made threats against him, the complaint was not only thoroughly evaluated by an internal investigation but was also referred to the Michigan State Police. During this investigation, defendant O'Connor was placed on restricted assignment so that plaintiff would not be in proximity to him until any danger to plaintiff's safety was determined. A copy of the restricted assignment for defendant O'Connor is attached to Superintendent Bergman's affidavit.

The affidavit by Superintendent Bergman further states that an internal investigation revealed that the incident not only did not occur but that another prisoner wrote a statement, attached to the affidavit, indicating that he had lied in giving prior information against defendant O'Connor because plaintiff had asked him to do so. Following submission of the report by the Michigan State Police to the Marquette County prosecutor, the latter declined to prosecute the case.

### Harassment

Plaintiff also contends that he has been subjected to harassment since bringing his allegations of false misconduct reports to the attention of the senior officials. With the exception of one instance discussed below, there is no allegation that the harassment has been caused by the defendants.

The fact that some instances of alleged harassment have occurred or have even been brought to the attention of prison supervisory officials is not a sufficient basis for subjecting the officials to liability under § 1983. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. Otherwise, a claim that supervisory prison officials negligently failed to halt harassment will not stand. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984).

Superintendent Bergman's second affidavit responds to the various vague and conclusory allegations of harassment plaintiff allegedly suffered, and indicates, as do the other uncontradicted affidavits, that each of the allegations specified in the complaint which was brought to the defendants' attention received the degree of consideration by prison authorities that it merited. No constitutional claim is stated.

### Threat by Officer

Plaintiff's remaining claim is that defendant O'Connor threatened him and pointed a revolver at him without justification. This incident allegedly occurred while O'Connor was in the control center and was separated from plaintiff by bulletproof glass.

In order to establish a violation of the Eighth Amendment, a plaintiff must show that the prison guards intentionally inflicted excessive or grossly severe punishment on him. *Stringer v. Rowe*, 616 F.2d 993, 998 (2nd Cir.1980). It is not every assault by a prison employee that comes within the requisites of the Civil Rights Act. See *Townes v. Swenson*, 349 F.Supp. 1246 (1972). Not even where a battery is involved does the potential common law tort necessarily rise to the level of

a constitutional violation. *Sheffey v. Green,* 391 F.Supp. 1044, 1046 (E.D.Ill. 1975) ("A single punch in the face by a prison guard does not constitute cruel and unusual punishment").

In order to establish a violation of the Eighth Amendment prohibition against cruel and unusual punishment, a plaintiff must show that the prison official "intentionally inflicted excessive or grossly severe punishment on him". *Stringer v. Rowe, supra.* The plaintiff must demonstrate that the defendant correction officer's acts were so abusive as to shock the conscience. There must be sufficient circumstances to demonstrate an evil intent, or recklessness, or at least deliberate indifference to the consequences of conduct for those under his control or dependent upon him. *Santiago v. Yarde,* 487 F.Supp. 52, 54 (S.D.N.Y. 1980).

Thus, assuming that defendant O'Connor did in fact point a gun at the plaintiff—an action defendant denies and one which plaintiff's witness now says did not occur—the circumstances surrounding this incident would preclude any finding that such inappropriate behavior amounted to cruel and unusual punishment.

### Conclusion

After reviewing the file, exhibits and the uncontradicted affidavits, the court finds an absence of any genuine issues of material fact, and further finds that defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is granted.