831 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert Lowell HYLAND, Plaintiff-Appellant,
v.
Tony R. YOUNG, Warden and Father Sorce, Catholic Chaplain,
Defendants- Appellees.
 No. 86-5025.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1987.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Robert Hyland appeals from the lower court's denial of damages upon finding that defendant Father John Sorce had violated Hyland's First Amendment rights regarding the free exercise of his religion. For the reasons that follow, we affirm.
 
 I.
 
 2
 For several months in late 1984 and early 1985, Hyland was confined to the segregation unit of the Federal Correctional Institute ("FCI") in Memphis, Tennessee. On December 16, 1984, while Father John Sorce was offering counseling to inmates in the segregation unit, he was requested by Hyland, a Catholic since childhood, to be given communion and allowed to give confession on or before Christmas. Father Sorce agreed to the request; however, as he forgot about it, he failed to keep his "promise." After Hyland filed a complaint on December 27, 1984, Father Sorce brought communion to him on December 30, 1984.
 
 
 3
 Hyland also takes offense at the manner in which Father Sorce gave him communion and heard his confession. Hyland was given communion through the food slot in the cell door, and on other occasions, through a screened window in the door. Hyland testified that he was able to take the host, but felt that it was degrading to do so in this manner. There was testimony that on one occasion Father Sorce dropped the host, and Hyland had to pick it up off the floor to put it in his mouth. Hyland also takes offense at his having been required to give confession through the screened door with another inmate also occupying the cell.
 
 
 4
 Father Sorce testified that confession in the above manner does not violate any religious principles of the Catholic faith. He did indicate that if Hyland had requested confession in a private room, that request would have been granted if at all possible. However, prison officials did not allow Father Sorce to enter a segregation cell, and security considerations severely limited the time and access Father Sorce had to prisoners in the segregation area.
 
 
 5
 Following a bench trial the district court found that Father Sorce had violated Hyland's First Amendment rights. Although finding that Father Sorce had violated the free exercise rights of Hyland, the court declined to award any damages, holding that the constitutional right violated was not clearly established at the time of the violation, and, further, that there was no showing of malice on the part of Father Sorce. The district court dismissed the claim against defendant Tony Young, the warden at FCI. The only issue raised on appeal is whether the district court erred in denying damages to Hyland upon finding that Father Sorce's failure to provide communion and confession at the time and in the manner requested by the plaintiff was unreasonable and, therefore, violated Hyland's First Amendment rights.
 
 II.
 
 6
 Initially, we find that Hyland is not entitled to any damages because the district court erred in concluding that Hyland's First Amendment rights had been violated. while "[p]risoners do not lose the right to free exercise of their religion upon incarceration," Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985), "awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system." Pell v. Procunier, 477 U.S. 817 (1974) (citing Price v. Johnson, 334 U.S. 266 (1948)). Therefore, rights inconsistent with one's status as a prisoner are necessarily lost. Abdullah v. Kinnison, 769 F.2d 345 (6th Cir. 1985). However, "[t]he needs of the institution and penological objectives must be balanced against the right of the individual prisoner." Jihaad v. O'Brien, 645 F.2d 556, 564 (6th Cir. 1981); see O'Lone v. Estate of Shabazz, --U.S. ----, 107 S. Ct. 2400 (1987). Therefore, a prisoner does not necessarily have a constitutional right to communion and confession at the time and in the manner desired by him or her.
 
 
 7
 The district court found that, although without malice, the actions of Father Sorce were unreasonable and therefore violated Hyland's First Amendment right of free exercise of religion. We disagree. As chaplain for the entire institution, Father Sorce had various duties and obligations not only to the plaintiff-appellant, but to all other inmates of various religious faiths. In addition, security implications necessarily limited the manner and scope of his activities. The Christmas season is a very busy time for a Catholic priest, even more so for a Catholic priest responsible for providing religious services to the different denominations constituting a prison population. The actions of a prison chaplain in forgetting a promise made to one inmate during a Christmas season are not unreasonable. Further, considering the restraints and limitations on Father Sorce, communion and confession in the manner given were also not unreasonable.
 
 
 8
 Assuming, arguendo, that Hyland's constitutional rights were unreasonably violated, the district court was correct in its holding that the rights violated were not clearly established. Therefore, the doctrine of qualified immunity precludes any liability. In this connection, we first note that the district court was technically incorrect in its application of qualified immunity. The district court found that Father Sorce was liable for the violation of Hyland's constitutional rights, but the doctrine of qualified immunity precluded any damages, citing Jihaad v. O'Brien, 645 F.2d 556 (6th Cir. 1981). That was an improper application of the doctrine.
 
 
 9
 Decisions subsequent to Jihaad have generally liberalized the qualified immunity doctrine. In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that the subjective malice aspect of the qualified immunity analysis was no longer to be considered, and the only question is whether or not the constitutional right in question was clearly established at the time of the alleged violation. Harlow, 457 U.S. at 816-18. More importantly, the Supreme Court made it quite clear in Harlow and in its subsequent holding in Mitchell v. Forsyth, 105 S. Ct. 2806 (1985), that if qualified immunity exists, the defendant is entitled to a dismissal and not simply a limitation on damages. Mitchell, 105 S. Ct. at 2815-16. Therefore, when the district court found that the right allegedly violated was not clearly established, the case should have been dismissed without any consideration of damages. See Anderson v. Creighton, --U.S. ----, 107 S. Ct. 3034 (1987).
 
 III.
 
 10
 Accordingly, upon consideration of the record and the briefs of the parties, we AFFIRM the district court to the extent that plaintiff-appellant is not entitled to any damages.