GEE v DEPARTMENT OF CORRECTIONS

Docket No. 198725. Submitted September 2, 1998, at Lansing. Decided April 16, 1999, at 9:10 A.M.

Arthur Gee, a prisoner in the custody of the Department of Corrections, received a major misconduct ticket for sexually assaulting another prisoner. Gee was granted a full administrative hearing with regard to the charge, as required by MCL 791.251; MSA 28.2320(51). The hearing officer found the charge sustained. The department served Gee with notice of the intent to conduct a fact-finding hearing before its Security Classification Committee to decide whether Gee should be labeled a homosexual predator in light of the determination of guilt with regard to the sexual assault charge. The committee conducted a hearing and labeled Gee a homosexual predator on the basis that, because of the earlier sexual assault finding, Gee fit the predator criteria. The department then denied Gee's request for a ruling that he was entitled to a formal § 51 adjudicatory hearing by a hearing officer, not a Security Classification Committee fact-finding hearing, before being labeled a homosexual predator. Gee filed a petition for judicial review in the Ingham Circuit Court. The court, William E. Collette, J., agreed with the petitioner's contention that he was entitled to a formal hearing, under § 51, and remanded the matter to the department for the hearing. The department appealed by leave granted.

The Court of Appeals *held*:

1. The court did not err in concluding that the decision to label Gee a homosexual predator was a "special designation" that "permanently excludes" him from community placement under MCL 791.251(2)(c); MSA 28.2320(51)(2)(c). However, under the particular circumstances of this case, § 51 was not violated. Here, Gee had a full § 51 hearing regarding the major misconduct sexual assault charge. A second § 51 hearing before the department could apply the special designation of homosexual predator to Gee would be a redundancy not required by § 51 in this case.

2. Subsection 51(2) provides for a hearing when an alleged prisoner violation "may result in the loss by a prisoner of a right, including but not limited to any 1 or more" of the matters thereafter listed. The statute does not require separate hearings where a

single instance of alleged misconduct might result in the loss of more than one right.

3. The department's unchallenged findings regarding the sexual assault charge established everything needed for application of the homosexual predator label. That designation was properly applied to Gee without a second § 51 hearing. The trial court's orders must be reversed and the matter must be remanded for entry of an order granting the department's motion for summary disposition.

Reversed and remanded.

PRISONS AND PRISONERS — PRISONER VIOLATIONS — HEARINGS.
    MCL 791.251(2); MSA 28.2320(51)(2) provides for a hearing pursuant to § 51 when an alleged prisoner violation may result in the loss by a prisoner of a right, including but not limited to any one or more of the matters thereafter listed; a single hearing, not separate hearings, is needed in cases where a single instance of alleged misconduct might result in the prisoner's loss of more than one right.

Prison Legal Services of Michigan, Inc. (by *Sandra Girard*), for the petitioner.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Jason Julian*, Assistant Attorney General, for the respondent.

Before: MACKENZIE, P.J., and BANDSTRA and MARKMAN, JJ.

BANDSTRA, J. Respondent Department of Corrections appeals by leave granted from an order denying the department's motion for summary disposition, granting petitioner prisoner's motion for summary disposition, and remanding for a hearing pursuant to MCL 791.251; MSA 28.2320(51) for the purpose of determining whether petitioner should be labeled a "homosexual predator." Because we conclude that the statute was satisfied when petitioner was granted a hearing with regard to the sexual assault charge that formed the basis for the homosexual predator determination, we reverse and remand.

Petitioner was placed in the custody of the department in 1989 to serve a fifteen- to forty-year sentence for assault with intent to commit murder and armed robbery convictions. In April 1993, petitioner received a major misconduct ticket for sexually assaulting another inmate. Petitioner's victim had filed a report stating that petitioner "grabbed him by the arms and began kissing his neck and lips along with fondling [his penis]." The complaint further alleged that petitioner then "put his penis against [the victim's] buttocks and ejaculated" and that "these actions were done without consent from [the victim] and were unwanted."

Petitioner was granted a full administrative hearing with regard to the major misconduct charge as required by § 51 of the statute, MCL 791.251; MSA 28.2320(51). Petitioner raises no argument that this hearing was not conducted properly under the statute. During the hearing process, petitioner and his victim gave different accounts regarding whether the sexual activity was consensual. The hearing officer noted that it was necessary to determine whether petitioner or the victim was more credible and concluded, on the basis of an evaluation of their demeanor, that the victim was more credible. Accordingly, the hearing officer made the following specific factual findings: "I find that this prisoner did make physical contact with [the victim], that he grabbed or placed his hands on [the victim's arms], and then touched his penis and ejaculated on [the victim's] buttocks. This was sexual contact. For sexual purposes as shown by ejaculation. The touching in this case was not consensual . . . . The charge is sustained."

Shortly thereafter, respondent served petitioner with notice of the department's intent to conduct a fact-finding hearing before its Security Classification Committee (SCC) to decide whether petitioner should be labeled a homosexual predator in light of the determination of guilt regarding the sexual assault charge. The members of the SCC are appointed by the facility's warden and include at least one member of the rank of assistant deputy warden or above. Department of Corrections Policy Directive 05.01.130, § K. The SCC conducted the hearing on June 4, 1994, and labeled petitioner a homosexual predator, stating that, because of the earlier sexual assault finding, petitioner "fits the predator criteria."

Petitioner subsequently requested a departmental ruling that he was entitled to a formal adjudicatory hearing conducted by a hearing officer, rather than an SCC fact-finding hearing, before being labeled a homosexual predator. The department denied petitioner's request for a ruling. Petitioner then filed a petition for judicial review. The circuit court agreed that petitioner was entitled to a formal hearing and remanded the matter back to the department. It is this determination that the department challenges.

The procedure used by the department in labeling petitioner a homosexual predator was based on the department's Policy Directive 05.01.140, § MM.[1] That section provides that "[i]f facility staff believe that the prisoner is a homosexual predator, the prisoner shall be given the opportunity for a hearing as provided in Administrative Rule 791.3310,  which shall be con-

---

[1] Policy Directive 05.01.140  has been renumbered since the time that petitioner was labeled a "homosexual predator."

ducted by the SCC." Rule 791.3310 provides for a fact-finding hearing at which a prisoner has the right to speak on the prisoner's own behalf and to receive a copy of any relevant document. 1989 AACS, R 791.3310. The officer—or, here, committee—hearing the matter then produces a summary report of the hearing and decision. *Id.* Under Policy Directive 05.01.140, § MM(3), a prisoner labeled a homosexual predator by the SCC may appeal the decision through the prisoner grievance procedure. There is no right to judicial review.

In this case, petitioner essentially claims that the procedure set forth in the policy directive is invalid because it conflicts with the mandates of MCL 791.251; MSA 28.2320(51) (also referred to as § 51). Subsection 51(2)[2] provides, in pertinent part:

> The hearings division [of the Department of Corrections] shall be responsible for each prisoner hearing which the department conducts which may result in the loss by a prisoner of a right, including but not limited to any 1 or more of the following matters:

> *        *        *

> (c) A special designation which permanently excludes, by department policy or rule, a person under the jurisdiction of the department for community placement.

Other "matters" falling within the requirements of this subsection are certain prison rule infractions and assaultive classifications. MCL 791.251(2)(b), (e); MSA 28.2320(51)(2)(b), (e). Although the record is not clear, petitioner's hearing with regard to the sex-

---

[2] The statutory language provided herein was the language in effect at the time petitioner was labeled a "homosexual predator."

ual assault charge was apparently provided under one of these provisions.

A hearing conducted pursuant to § 51 is an administrative adjudicatory proceeding with certain limited due process protections. *People v Carr*, 149 Mich App 653, 657; 386 NW2d 631 (1986). The prisoner is, for example, entitled to notice, an opportunity to present evidence and to make an oral or written argument before a hearing officer, an opportunity to submit questions for the department's witnesses, and a decision based on the preponderance of the evidence. MCL 791.252;   MSA 28.2320(52). Judicial review is also available. MCL 791.255;   MSA 28.2320(55).

The circuit court concluded that the decision to label petitioner a homosexual predator was a "special designation" that "permanently excludes" him from community placement under subsection 51(2)(c). The department contends that the court erred in reaching that conclusion. We disagree.

Prisoner eligibility for community status is governed by 1993 AACS, R 791.4410. That rule provides in relevant part:

> (1) A prisoner is eligible for consideration for community status when there is reasonable assurance that she or he will not become a menace to society or to the public safety as demonstrated by meeting all of the following criteria:
>
> *          *  ,  *
>
> (k) Has not been given a special designation by the department that permanently excludes participation in community programs. . . . These special designations are as follows:
>
> *          *          *

(ii) Unwarranted risk to the public, which is defined as any of the following:

(A) Predatory, compulsive, or assaultive sexual behavior in the background of the prisoner.

Clearly, the label of homosexual predator is a "special designation" under 1993 AACS, R 791.4410. Once a prisoner is designated a homosexual predator, the prisoner is ineligible for community placement. Because the designation denies the prisoner community placement eligibility, the determination whether to label the prisoner a homosexual predator falls squarely within the scope of subsection 51(2)(c). Compare *Edmond v Dep't of Corrections (On Remand)*, 143 Mich App 527, 535; 373 NW2d 168 (1985).

The department contends that subsection 51(2)(c) is inapplicable because petitioner is also ineligible for community placement on other grounds, apart from the homosexual predator label. The department points to 1993 AACS, R 791.4410(1)(*l*)(iii) and (xliv), which make prisoners convicted of assault with intent to commit murder and armed robbery ineligible for community placement until 180 days before the expiration of their minimum sentence. According to the department, because petitioner will not be within 180 days of the expiration of his minimum sentence until 2002, the decision whether to label petitioner a homosexual predator could not have any effect on his community placement eligibility. The flaw in this argument is that it wrongly assumes the homosexual predator label is imposed for a finite period. Under Policy Directive 05.01.140, § NN, the label is permanent until removed in the discretion of the warden after at least five years. There is, therefore, no cer-

tainty that the labeling of petitioner as a homosexual predator will be removed either before or after 2002. Because the decision whether to label petitioner a predator potentially excludes him from community placement eligibility even after the bars of 1993 AACS, R 791.4410(1)($l$)(iii) and (xliv) are removed in 2002, the labeling falls within subsection 51(2)(c) of the statute.

Nonetheless, we conclude that, under the particular circumstances of this case, § 51 was not violated. The question before us is whether, having had a full § 51 hearing regarding the major misconduct sexual assault charge, petitioner was entitled to another § 51 hearing before the department could apply the special designation of homosexual predator to petitioner. We agree with the department that a second hearing would be a redundancy not required by § 51 in this case.

Subsection 51(2) provides for a hearing when an alleged prisoner violation "may result in the loss by a prisoner of a right, including but not limited to any 1 or more" of the matters thereafter listed. Considering the "1 or more" language, we conclude that the Legislature did not intend that separate hearings would be needed in cases where a single instance of alleged misconduct might result in the loss of more than one right.

That is the case here. Following the § 51 hearing, petitioner was adjudged guilty of sexual assault because he had physically forced himself on his victim for sexual purposes. The department based its labeling of petitioner as a homosexual predator on that finding. The department found this label to be an automatic result of the sexual assault determination

in the sense that this determination meant that petitioner "fits the predator criteria."

We agree with this analysis under the facts of this case.[3] Sexual assault is defined as "sexual penetration of, or sexual contact with, another person without that person's consent; non-consensual physical contact for sexual purposes." Policy Directive 03.03.105, Attachment B. Application of the homosexual predator designation requires "a documented . . . finding of guilt on a major misconduct . . . which establishes the use of force or threat of force to commit . . . a non-consensual sexual act with a victim of the same sex . . . ." Policy Directive 05.01.140, § LL. Although the sexual assault definition does not contain the "use of force or threat of force" language found in the homosexual predator definition, we find it difficult to conceive of a situation where nonconsensual physical contact with a victim for sexual purposes could occur without at least the threat of force being applied. Certainly no such situation is at issue here. From the filing of the complaint alleging that he had "grabbed" the victim's arms, petitioner was on notice that force was alleged. After the hearing, the finding that petitioner was guilty of sexual assault specifically concluded that he had applied the alleged force to accomplish his purposes.

Thus, the department's unchallenged findings regarding the sexual assault charge established everything needed for application of the homosexual

---

[3] We do not suggest that § 51 never requires a second hearing before application of the homosexual predator label in any situation where a determination of homosexual sexual assault has been properly made. There may be circumstances where the elements of the homosexual predator designation are not as clearly resolved by the major misconduct hearing with regard to a sexual assault as they were in this case.

predator label. That designation was properly applied to petitioner without the need for a second hearing under § 51 of the statute.

We reverse the orders of the lower court and remand this matter for entry of an order granting the department's motion for summary disposition. We do not retain jurisdiction.