# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3595

_____

David Williams,

        Appellant,

      v.

Larry Norris, Director, Arkansas
Department of Correction; Ray Hobbs,
Chief Deputy Director, Arkansas
Department of Correction; George
Brewer, Classification Administrator,
ADC; Greg Harmon, Warden, East
Arkansas Regional Unit, ADC;
Tommy James, Jr., Assistant
Warden, Maximum Security Unit,
ADC; Marvin Evans, Jr., Warden,
Tucker Unit, ADC; Grant Harris,
Warden, Varner Unit, ADC; Tim
Moncrief, Assistant Warden, Varner
Unit, ADC,

        Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

[UNPUBLISHED]

_____

Submitted: May 7, 2008
Filed: May 12, 2008

_____

Before BYE, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Arkansas Department of Correction (ADC) inmate David Williams appeals the district court's grant of summary judgment in this 42 U.S.C. § 1983 action stemming from his long-term confinement in administrative segregation (ad seg). Williams claimed that various prison officials denied him due process because their periodic reviews of his ad seg status were meaningless, sham proceedings. He also claimed defendants violated his right to equal protection based on differing or unfair treatment among inmates with different classifications, in different institutions, or in different types of confinement. The district court concluded that Williams's lengthy ad seg confinement was atypical, but that he received all the process he was due, and that Williams failed to establish an equal protection violation. Following careful review, see Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (summary judgment standard of review), we affirm in part and reverse in part.

Williams--who is serving a life sentence without the possibility of parole, imposed in 1981--has continuously spent almost nine years in ad seg confinement in Arkansas, plus more than three years in ad seg in Utah,[1] and we agree with the district court that this constitutes an atypical and significant hardship, considering the particular restrictions imposed on Williams in relation to his ad seg status during this time, and thus he had a liberty interest protected by the Due Process Clause. See Sandin v. Conner, 515 U.S. 472, 483-87 (1995) (whether inmate has liberty interest protected by due process depends on whether inmate suffered atypical and significant deprivation in relation to ordinary incidents of prison life); Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) (atypical and significant hardship is question of fact); Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007) (Second Circuit has generally found that segregation of longer than 305 days in standard "special housing unit" conditions is sufficiently atypical to require procedural due process protection under Sandin), petition for cert. filed, 76 U.S.L.W. 3417 (U.S. Feb. 6, 2008) (No. 07-1015); Shoats

---

[1]See Giano v. Selsky, 238 F.3d 223, 226 (2d Cir. 2001) (separate segregation sentences should be aggregated for purposes of due process inquiry when they constitute sustained period of confinement).

v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (prisoner's almost eight years in administrative custody was "atypical" and he had protected liberty interest); Herron v. Schriro, 11 Fed. Appx. 659, 661-62 (8th Cir. 2001) (unpublished per curiam) (affirming district court's finding that inmate's lengthy ad seg confinement, more than thirteen years, resulted in atypical hardship in relation to ordinary incidents of prison life, and defendants could not continue to deprive inmate of general population status without affording him due process); cf. Wilkinson v. Austin, 545 U.S. 209, 217, 223-25 (2005) (finding atypical and significant hardship at "supermax" prison where, in addition to conditions similar to most in solitary confinement, placement is indefinite, is reviewed only annually after initial 30-day review, and disqualifies otherwise eligible inmate for parole consideration).

Once a liberty interest is established, the next question is what process is due. See Wilkinson, 545 U.S. at 224 (applying framework established in Mathews v. Eldridge, 424 U.S. 319 (1976)). We conclude that, for an ad seg inmate, the Constitution requires no more than the process Williams received--reviews at 60-day intervals at which Williams could make statements and present evidence, and annual meetings with a warden--provided such reviews were meaningful. See Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (discussing sufficiency of process for ADC inmate in segregation cell); Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of ad seg status); Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir. 1975) (where inmate is held in ad seg for prolonged or indefinite period, due process requires that his situation be reviewed periodically in meaningful way).

We conclude, however, that there remains an unresolved fact issue on this record as to whether Williams actually received meaningful reviews, rather than sham reviews, as he contends. See Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005) (non-moving party must show existence of facts on record which create genuine material issue); cf. de Llano v. Berglund, 282 F.3d 1031, 1035-36 (8th Cir. 2002)

(plaintiff's unsupported belief that employment pre-termination hearing was sham did not preclude summary judgment on due process claim; decision-makers presumed to be honest and impartial); Ryan v. Ill. Dep't of Children & Family Servs., 185 F.3d 751, 762 (7th Cir. 1999) (plaintiff who can introduce evidence that employment termination decision had already been made and any hearing would be sham is entitled to go forward with due process claim; due process requires that hearing not be sham or pretense).

Specifically, the record establishes that Williams was found guilty of murdering another inmate in 1982, and he was kept in punitive segregation through mid-1983 before being placed in general population. For the next twelve years, from 1983 to 1995, it was undisputed that he spent most of his time in general population without any violent incident, and with no evidence that he exhibited violent or disruptive propensities. In December 1995, after Williams was attacked by another inmate, he was placed in ad seg and was transferred for his own protection in 1996 to a prison in Utah, where he remained in ad seg. He returned to Arkansas in 1999, and he has remained in ad seg at various ADC institutions since then. Defendants indicated that the 1995 attack on Williams was precipitated by his drug activity, but they did not dispute Williams's evidence or statements that he had not misbehaved during his ad seg confinement, and Williams correctly argues that undue weight should not be given to an inmate's past conduct (in this case, distant past) in reviewing his ongoing ad seg status. See Kelly, 525 F.2d at 399-400 (recognizing that ad seg is not punitive and it looks to present and future rather than past; ad seg determination involves exercise of administrative judgment and prediction of what inmate will probably do or have done to him if he is permitted to return to population after period of segregation). Defendants offered no evidence whatsoever as to why they concluded, after each hearing before a committee tasked with reviewing Williams's housing status, that he remained a security threat. They offered no evidence, for example, about Williams's behavior or demeanor while in ad seg, his psychological status, or their day-to-day dealings with him, nor any evidence from which it could be concluded that Williams

had a generally volatile or disruptive character. Cf. Shoats, 213 F.3d at 141-43, 145-46 (noting committee's conclusion that inmate remained significant danger to institutional safety and security if released from administrative custody was supported by psychological evaluations characterizing inmate as remorseless sociopath knowledgeable in workings of prisons and escape techniques, capable of leading other inmates in such undertakings, and inclined to do so, and describing him as volatile and manipulative; prisoner was advised of rationale for continued ad seg confinement, including his past crimes of murder, escape, kidnaping and assault, as well as assessment that he remained current threat to institutional security based on prison professionals' current impressions of him based on their day-to-day dealings with him over time); Kelly, 525 F.2d at 400 (reason for segregation must not only be valid at outset but must continue to subsist during period of segregation).

We therefore conclude that summary judgment on Williams's due process claim was improper, and we reverse and remand for further proceedings. We find no support, however, for Williams's contention that defendants were constitutionally required to provide criteria for his progression and reintegration into general population through good behavior. Defendants need only have provided him with meaningful review of his status and the reasons for his continued ad seg confinement.

As to any equal protection claim, we conclude that summary judgment for defendants was proper. Williams made no showing that parole-eligible inmates, death-row inmates, or other categories of inmates were treated differently, despite being similarly situated, in a manner that bore no rational relation to any legitimate penological interest. See Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003).

Accordingly, we affirm the grant of summary judgment on the equal protection claim, and reverse the grant of summary judgment on the due process claim, and we remand for further proceedings consistent with this opinion. We deny Williams's pending motions.

_____