RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0106p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

TORAN V. PETERSON,

        *Plaintiff-Appellant*,

     *v.*

RICHARD JOHNSON; LARRY LINDY; RUO,
indentified on initiating document as
Unknown Lindy,

        *Defendants-Appellees*,

UNKNOWN KLINESMITH, et al.,

        *Defendants*.

No. 11-1845

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-CV-225—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: April 12, 2013

Before: BATCHELDER, Chief Judge; SUHRHEINRICH and DONALD, Circuit
Judges.
_____

**COUNSEL**

**ON BRIEF:** Toran Peterson, Ionia, Michigan, pro se.

     BATCHELDER, C. J., delivered the opinion of the court, in which
SUHRHEINRICH, J., joined. DONALD, J. (pp. 19-21), delivered a separate dissenting
opinion.
_____

**OPINION**
_____

     ALICE M. BATCHELDER, Chief Judge. Appellant Toran Peterson is a prisoner

in Michigan's Ionia Correctional Facility, a maximum-security penitentiary. He appeals,

1

*inter alia*, the district court's grant of summary judgment in favor of the defendants on his claim that Appellees Richard Johnson and Larry Lindy, officers of the Michigan Department of Corrections, violated his Eighth Amendment right against cruel and unusual punishment. His appeal turns on a single question: Where a disputed issue of fact is resolved at a Michigan major misconduct hearing as a necessary part of the hearing's judgment, does that factfinding have preclusive effect in collateral litigation brought by the prisoner under 42 U.S.C. § 1983? Because we are persuaded that, in this case, it does, we AFFIRM the district court's judgment.

**I**

Peterson filed a complaint under 42 U.S.C. § 1983 against sixteen Department of Corrections officials at his prison, including Officers Johnson and Lindy. The district court either dismissed or granted summary judgment against him on all of his claims, and Peterson failed to properly appeal most of those claims. Of the claims he does appeal, we have carefully reviewed the district court's opinion and the record, and we conclude that the district court did not err in granting summary judgment. Because, with the exception of Peterson's Eighth Amendment claim, the district court correctly set out the applicable law and correctly applied that law to the undisputed material facts contained in the record, we affirm its judgment for every claim but the Eighth Amendment claim on the grounds stated in its well-reasoned opinion.

As to the Eighth Amendment claim, the district court reached the right result but did not adequately identify the basis for that result. We now supply that missing basis.

**A**

Peterson's Eighth Amendment claim arises from an incident in which Officers Johnson and Lindy were attempting to put Peterson in his cell. Johnson's hand became stuck in the cell just as the door began to close. Johnson's frantic shouts alerted Lindy to stop the door from shutting on Johnson's hand. The sole factual dispute in this case—and the fact on which this case hinges—is why Johnson's hand was in the cell. Peterson says Johnson put his hand in the cell as an excuse to pull Peterson out and

assault him; Johnson maintains that Peterson grabbed Johnson's hand and pulled it into the cell.

Either way, what happened next is not in dispute: as a result of Johnson's effort to pull his hand out of the cell, Peterson also came out of the cell. At that point, after pulling Peterson back and forth, Johnson and Lindy pushed him to the ground and pinned him there until other prison staff helped them place Peterson back in his cell. This brief scuffle left no marks on Peterson and is the only use of force that Peterson claims was excessive.

As a result of the melee, Peterson claims that he "suffered from pain, shock, fright, anguish, anger, and humiliation." He also alleges injury to his right wrist, where he says the handcuffs dug into his skin painfully during the scuffle. This injury allegedly caused 100 days of "shooting nerve pain" running from Peterson's wrist to his shoulder. The injury would occasionally make his hand lock up and caused particular discomfort if he raised his arm over his head.

The day after the hand-grabbing incident, Johnson filed a major misconduct report against Peterson, alleging that Peterson had committed assault and battery. Two weeks later, a hearing officer conducted a major misconduct hearing to resolve the charge. By state law, a major misconduct hearing must, as we detail below, accord the accused prisoner a number of rights. *See, e.g.*, Mich. Comp. Laws § 791.252. Peterson exercised several of those rights. He appeared at his hearing, heard all the evidence against him, pled not guilty to the charge, provided several sworn statements to support his account of the facts, called five witnesses in his defense and had their affidavits read into the record, and moved to have the hearing officer disqualified for bias.

The only evidence in the case that the hearing officer did not permit Peterson to view was the video of the event. Upon motion from the Department of Corrections, the hearing officer had exercised his statutory authority to keep that evidence confidential. *See* Mich. Comp. Laws § 791.252(h). As required by the statute, though, the hearing officer entered into the record the reason for his holding—"to allow [the video's] actual viewing would reveal the limitations and capabilities of the fixed security device" that

recorded the tussle.  Further, the hearing officer gave Peterson a detailed description of what the video depicted, down to the time-stamped second of each relevant recorded activity.  That description included the following account of the altercation:

> At 1826:22 [Peterson] is back at his cell.  [At] 1826:27 [Johnson] bends forward, the door is closing and Officer Lindy is pulling it open.  There is a struggle, at 1826:30 [Peterson's] hands can be seen out of the door, and Peterson comes out of his cell and he and the officers go to the floor.  Other staff respond and Peterson is put back in his cell at 1828:11.

After considering all of the evidence, the hearing officer rejected Peterson's motion that he disqualify himself for bias and explained the basis for that rejection.  The hearing officer then issued a finding of fact that "once Peterson was in his cell, he grabbed [Johnson] by the right hand and pulled [Johnson's] hand into the cell as the door was closing."  Based on this finding, the hearing officer issued a written final decision finding Peterson guilty of assault and battery and sentencing him to thirty days of detention.  Nothing in the final decision purported to affect the validity of Peterson's underlying conviction for murder or the length of the sentence that he was, and is, serving as a result of his underlying conviction.

A copy of the written final decision was delivered to Peterson.  The decision was subsequently upheld upon administrative review.  Peterson did not exercise his statutory right to state judicial review of the final decision.

**B**

Two years later, Peterson filed the § 1983 lawsuit that is the subject of this appeal, seeking financial damages for Johnson's alleged use of excessive force.  As the basis for his Eighth Amendment claim, he maintained, as before, that Johnson had put his hand into Peterson's cell as an excuse to pull Peterson out of his cell and abuse him.  Johnson and Lindy responded with a motion for summary judgment, arguing, *inter alia*, that the hearing officer made a specific finding of fact that Peterson had "instigated the incident" by grabbing Johnson's hand, and that the court should not "substitute its judgment for that of the hearing officer on factual issues."  In addition to a number of

state court decisions discussing deference paid by state courts to administrative decisions on direct review, the defendants cited *Shelly v. Johnson*, 684 F. Supp. 941, 945 (W.D. Mich. 1987), *aff'd*, 849 F.2d 228 (6th Cir. 1988) (per curiam), a federal district court decision holding, in the context of a § 1983 action, that on collateral review federal courts could not disturb the factual findings of Michigan prison hearing officers.

The case was assigned to a magistrate judge, who held that Peterson had to prove both that he objectively suffered serious pain as a result of Johnson and Lindy's use of force and that they used the force out of a subjective sadistic intent to harm Peterson. *See, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The magistrate recommended finding that Peterson failed to meet either burden because Peterson had not suffered documented physical injuries and the force used against Peterson was *de minimis*. In his view, the former fact showed that Peterson could not meet the objective suffering prong, and the latter fact showed that he could not prove the subjective sadistic-intent prong.

Peterson objected, arguing that at the summary judgment stage the magistrate was required to assume the truth of his allegations. The district court overruled Peterson's objection and adopted the magistrate's conclusion, albeit on crucially different grounds. The district court held that it could not accept Peterson's factual allegation that Johnson grabbed him because that allegation conflicted with the hearing officer's finding of fact. Because it could not "ignore the factual findings made at [Peterson's] major misconduct hearing," the district court concluded that Peterson could not establish the subjective-intent prong of his claim. In other words, because Peterson had grabbed Johnson, the resulting "force applied by Defendants was a good faith effort to maintain or restore discipline and was not an unnecessary or wanton infliction of pain." The district court accordingly found that it did not need to reach whether Peterson could prove the objective suffering prong.

On appeal, Peterson argues that there is a genuine issue of material fact as to who grabbed whom and that the issue should be resolved by a jury. He does not dispute that the force used against him was fairly minor and that he suffered no visible physical

injuries, but argues that any use of real force for purely malicious and sadistic purposes is necessarily excessive.

## II

We review de novo the district court's grant of summary judgment. *Spees v. James Marine, Inc.*, 617 F.3d 380, 388 (6th Cir. 2010). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)(2)). In reviewing the facts, we draw all reasonable inferences in Peterson's favor and may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). As the moving parties, Johnson and Lindy had the initial burden of "'showing'—that is, pointing out to the district court—that there [was] an absence of evidence to support [Peterson's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After that showing, the burden then shifted to Peterson to "designate specific facts showing that there [was] a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). If Peterson failed to make the necessary showing on an element upon which he would bear the burden of proof at trial, Johnson and Lindy were entitled to summary judgment. *See id.* at 322-23.

## III

Ordinarily, this standard of review would require reversing the judgment below. Peterson sharply disputes Johnson and Lindy's account of who grabbed whom, and this disputed fact is material to the case. Indeed, the hand-grabbing dispute is dispositive because it frames the entirety of the "core judicial inquiry" at issue here, which is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (internal quotation marks omitted). If Johnson was just making up an excuse to pull Peterson out of his cell and attack him, the district court would have erred in finding that Peterson could not establish the subjective sadistic-intent prong. *Curtin*, 631 F.3d at 384 (recognizing that courts frown on even *de minimis* uses of force where the

purpose of the force was "diabolic or inhuman" (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). But if Peterson grabbed Johnson's hand, put it in danger of being crushed by the closing cell door, and exited his cell as a result of Johnson's retrieving his hand, then the ensuing two-minute effort to free Johnson's hand and return Peterson to his cell was not only permissible, it was entirely reasonable. This is true even though Peterson alleges that he suffered prolonged nerve pain afterwards, as nothing in his allegations about the force used against him shows that it was diabolically intended to harm him.

But this is not an ordinary case that comes to us on a comparatively blank slate. Rather, it comes after an agency has issued a final determination on precisely the disputed factual matter on which this case turns and has done so in an adjudicative setting where the parties had the incentive to, and in fact did, vigorously assert their contradicting positions. And it comes not on direct review, with Peterson challenging the legitimacy of the agency's determination below, but in a collateral proceeding that seeks to wholly set aside the agency's prior factual finding. Thus, we are squarely presented with the question of first impression regarding what kind of preclusive effect we must give to the hearing officer's finding that Peterson grabbed Johnson's hand and not vice versa. The answer to that question turns first on federal law and then on Michigan law.

**A**

The federal courts in this Circuit have occasionally given preclusive effect to factfinding from Michigan prison hearings. For instance, in *Johnson v. Mandenberg*, 893 F.2d 1334 (6th Cir. 1990) (table), we instructed a prisoner collaterally attacking the fact findings of a hearing officer that "his remedy lay in an appeal to the Michigan courts, not an action under § 1983" because the findings cannot be "subject to collateral attack here." Similarly, in the *Shelly v. Johnson* opinion that we later affirmed, Chief Judge Hillman explained that:

> Federal district courts . . . do not sit as appellate courts to review the
> factual findings of hearing officers in prison misconduct hearings. To the
> extent that there was a dispute as to the factual circumstances
> surrounding any given incident, it was the function of the hearing officer,

> not this court, to resolve it. Section 1983 does not extend to [a] plaintiff a right to relitigate in federal court evidentiary questions arising in administrative disciplinary proceedings.

684 F. Supp. at 945. But neither *Mandenberg* nor *Shelly* has precedential value, nor do they provide a clear legal rationale for their conclusions. *Shelly* comes the closest, citing *Wood v. Strickland*, 420 U.S. 308, 326 (1975), and essentially quoting a passage from it that states, "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings." But while *Wood* is certainly precedential, it speaks both broadly and briefly, and does not provide any guidance on the exact contours of any preclusive effect a federal court should give a state agency's fact finding.

Enter the Supreme Court's opinion in *University of Tennessee v. Elliott*, which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799 (1986) (citation, internal quotation marks, and edits omitted). *Elliott* addressed a state agency determination that had not been appealed to state court, and found that the agency's factual determinations were binding in the plaintiff's collateral § 1983 action. *Id.* at 797. Thus, while *Elliott* obviously does not speak directly to Michigan hearing-officer findings, it does establish four criteria for, in the context of a § 1983 case, according preclusive effect to a state administrative agency's unreviewed factual determination. We take each one in turn.

The first is that the agency must have been acting in a "judicial capacity." This Circuit has recently affirmed that an administrative agency "'acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and [gives the parties] an opportunity to seek court review of any adverse findings.'" *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012) (quoting *Nelson v. Jefferson Cnty., Ky.*, 863 F.2d 18, 19 (6th Cir. 1988)). Under this standard, the hearing officer's determination here clearly qualifies as having been rendered in a "judicial capacity." The hearing officer considered evidence that was put

into the record by Peterson and Johnson, allowed the parties to argue their version of the facts at a formal hearing, and issued a written final decision that, had Peterson chosen to appeal, could have been subject to direct review in state court. *See* Mich. Comp. Laws § 791.255.

Indeed, there is a whole raft of judicial-type protections available to Michigan prisoners in major misconduct hearings. The accused prisoner must receive an "evidentiary hearing without undue delay," be given "reasonable notice" of the hearing, receive "an opportunity to present evidence" and to present "oral and written arguments on issues of fact," and be allowed to submit "rebuttal evidence" to the evidence against him. *See* Mich. Comp. Laws § 791.252(a), (b), (d), (e). Further, the evidence at the hearing may be admitted only on essentially the same evidentiary standard used for all Michigan administrative hearings, *compare* § 791.252(g), *with* § 24.275 (standard Michigan administrative evidentiary rules); any objections to the evidence's admissibility must be resolved and explained on the record, *see* § 791.252(g); and all admitted evidence must be made part of the record, *see* § 791.252(h). Further, the presiding hearing officer must be an attorney, can "administer an oath or affirmation to a witness" and "take depositions" as a part of his fact-finding role, must be impartial and must recuse if the accused files a motion successfully showing bias, must abstain from ex parte communications with the accused prisoner and the accusing Department of Corrections staff, and must make an official record of the hearing at which he presides. *See* Mich. Comp. Laws §§ 791.251(6); 791.252(f), (i), (j); 791.253. The hearing officer must conclude the process by issuing a written final decision that is based solely on the preponderance of the evidence in the record, and that decision must be immediately mailed to the accused prisoner. *See* Mich. Comp. Laws § 791.252(k). And if the prisoner disagrees with that final decision, he has a right to appeal it within the agency and then, if still displeased, to state court. *See* Mich. Comp. Laws §§ 791.254, 791.255.

Given all of these protections, it is no wonder that for decades Michigan courts have recognized major misconduct hearings as "judicial proceedings." *See Couch v. Schultz*, 483 N.W.2d 684, 686 (Mich. Ct. App. 1992) (reaching this conclusion after

noting that prisoners in these hearings have statutory rights to present evidence, present oral and written arguments, examine witnesses via questions submitted to the hearing officer, receive notice of the hearing, an unbiased hearing officer, and judicial review). Similarly, both Michigan courts and this Circuit have long held that the "Michigan prison hearing officers" themselves are "full time judicial officer[s]." *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988) (per curiam); *Jones v. Sherman*, 625 N.W.2d 391, 392-93 (Mich. Ct. App. 2000). Thus, for instance, this Court recently concluded that a Michigan hearing officer was a judicial officer acting in her "*judicial capacity*" when "presiding over a [major misconduct] hearing and authoring a hearing report." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 498 (6th Cir. 2011) (emphasis added; internal quotation marks omitted). In sum, the agency factfinding before this court was clearly rendered in a judicial capacity.

The next two *Elliott* criteria are just as clear and even simpler to show. First, Peterson's hearing officer "resolve[d]" a "disputed issue[] of fact" that was "properly before it," *Elliott*, 478 U.S. at 799, when he rejected Peterson's factual account and found, as a necessary predicate to his ultimate ruling that Peterson committed assault and battery, that Peterson "grabbed [Johnson] by the right hand and pulled [Johnson's] hand into the cell as the door was closing." Second, as demonstrated at length above, Peterson had "an adequate opportunity to litigate" the factual dispute. *Id.* Not only did he have, and exercise, a plethora of statutory protections, any objections he had to the major misconduct hearing itself could have been appealed within the department and then, if necessary, to state court. He exercised the first of these appellate rights, which resulted in the agency's affirming the hearing officer's final decision; he declined to appeal to state court.

That brings us to the last *Elliott* criterion, which provides that if the prior three are satisfied, then we must give the agency's finding of fact the same preclusive effect it would be given in state courts. *Elliott*, 478 U.S. at 799. And so now our inquiry turns to Michigan law.

**B**

To interpret state law, "we apply the law of the state's highest court." *Herrera*, 680 F.3d at 544 (internal quotation marks omitted). When that court has yet to speak on a subject, we "must ascertain the state law from all relevant data," including the state's intermediate appellate courts, the opinions of which we give weighty, but not controlling, deference. *Id.* Neither the Michigan Supreme Court nor the Michigan Court of Appeals has yet determined whether preclusive effect should be given to a major misconduct hearing's factfinding. Thus, we will have to be guided by their standard rules on agency issue preclusion.

The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages and tracks several of the *Elliott* factors. The first stage applies to all cases where preclusion is claimed, and asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006) (citing *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004)). The next stage applies only to parties seeking to preclude litigation on a factual issue that was decided by an administrative agency. It asks whether: (1) the administrative decision was adjudicatory in nature; (2) there was a right to appeal from the decision; and (3) the legislature intended to make the decision final absent an appeal. *Nummer v. Treasury Dep't*, 533 N.W.2d 250, 253 (Mich. 1995).

Some of these factors have already been reviewed or are obvious: The agency determination, as established above, was adjudicatory in nature, *see also Gee v. Dep't of Corr.*, 597 N.W.2d 223, 226 (Mich. Ct. App. 1999) ("A hearing conducted pursuant to [Mich. Comp. Laws § 791.251] is an administrative adjudicatory proceeding . . . ."); Peterson had the right to appeal the determination to state court, *see* Mich. Comp. Laws § 791.255; and there is mutuality of estoppel—which, in this context, means only that the parties to the major misconduct hearing (Peterson and Johnson) are essentially the

same as the parties to this proceeding, *see Monat*, 677 N.W.2d at 846. The remaining factors require a bit more attention.

Turning to the first prong of the first stage, we have already noted that the agency decision resolved Peterson and Johnson's dispute over who grabbed whom and that this resolution was essential to the hearing officer's judgment, which was that Peterson had committed assault and battery precisely by grabbing Johnson's hand. And for the question to have been "actually litigated," it must have been put into issue by the complaint, submitted to the trier of fact, and determined by the trier. *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 783 n.49 (Mich. Ct. App. 2002) (per curiam) (citing *VanDeventer v. Mich. Nat'l Bank*, 432 N.W.2d 338, 341 (Mich. Ct. App. 1988) (per curiam)). Here, the charge Johnson made against Peterson was that Peterson grabbed his hand and put it in danger of being crushed, this charge was submitted to the hearing officer for resolution, and it was resolved. Thus, it was "actually litigated." Finally, by statute, this resolution was a valid and final one—that is, a resolution the hearing officer was empowered by law to make and to have carried out subject only to appellate review. *See* Mich. Comp. Laws §§ 791.251 (requiring hearing officers to conduct major misconduct hearings), 791.252(k) (describing a hearing officer's resolution of a major misconduct hearing as a "final decision" and a "final disposition"), 791.255(1) (stating that "a final decision . . . of a hearings officer" is subject only to agency and judicial review).

The next question Michigan courts ask is whether Peterson received a "full and fair opportunity to litigate" his factual allegations. *Monat*, 677 N.W.2d at 845 (internal quotation marks and brackets omitted). In assessing this question, they weigh thirteen factors while recognizing that, ultimately, the answer "'rest[s] on the . . . courts' sense of justice and equity.'" *Id.* at 845 n.2 (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971)). Almost all of the thirteen factors clearly either weigh in favor of a full-and-fair finding or are simply irrelevant to this case. *Id.* As examples of the former, Peterson could have obtained judicial review and the issue up for preclusion is factual and not legal; as an example of the latter, there are no other

judicial determinations that were inconsistent with the hearing officer's factfinding. While we could stop with that, we consider the question further to ensure "justice and equity" counsel finding that Peterson had a full and fair chance to litigate. *See id.*

Again, there is no question that Peterson had incentive to vigorously contest Johnson's account, not least because losing the argument could mean, and did mean, thirty days of detention. And vigorously contest it he did, appearing at the hearing, calling witnesses, submitting several personal affidavits, responding to the evidence against him, and even moving to disqualify the hearing officer for bias. Further, he had a panoply of statutory rights at his disposal to assure him a full and fair opportunity to obtain a fair decision on the issue, up to and including state judicial review of the entire proceeding.

Indeed, the *type* of judicial review available to him on the agency's factual determination shows that Michigan considers major misconduct hearings "full and fair" opportunities to litigate such factual questions. This is because, by law, factual determinations made at major misconduct hearings receive the same "substantial-evidence" judicial review on direct appeal as do any other agency's findings of fact. *Compare* Mich. Comp. Laws § 791.255(4) (direct judicial review of a hearing officer's fact finding is limited to determining if it "is supported by competent, material and substantial evidence on the whole record"), *with* § 24.306(1)(d) (direct judicial review of agency fact finding is limited to determining if it is "supported by competent, material and substantial evidence on the whole record"); *see also Meadows v. Marquette Prison Warden*, 324 N.W.2d 507, 509 (Mich. Ct. App. 1982) (per curiam) (reviewing a hearing officer's factual findings under the same standard of review as for all other agency factfinding). The interest in ensuring fair and accurate factfinding exists in appeals of both a major misconduct hearing and any other type of agency hearing. If, then, there were some sort of special concern with the factfinding at major misconduct hearings, they would not receive identical review by state courts on direct appeal. Thus, it is apparent that Michigan considers major misconduct hearings a forum in which to fully and fairly litigate factual questions. *See, e.g.*, *Walen v. Dep't of Corr.*, 505 N.W.2d 519,

521 (Mich. 1993) (finding that "a prison disciplinary case falls within the [statutory] definition of a 'contested case'" just like any other agency determination, which means that such cases are identical to other agency proceedings "in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing" (some internal quotation marks omitted)).

This does not mean that the forum itself is identical to any other agency forum. It is not. For instance, in a standard agency hearing, a party can use the agency's subpoena power to compel witnesses to appear, is entitled to submit briefing on legal issues, and can personally cross-examine adverse witnesses. *See* Mich. Comp. Laws §§ 24.273; 24.272(3), (4). But those distinctions make no difference to the fullness and fairness of the opportunity afforded by a major misconduct hearing to decide a factual issue. There is no allegation before us that Peterson could not compel the attendance of a particular witness, and even if there had been such a concern, Peterson could have made a direct appeal to state court, where the court could have expanded the record as much as it saw fit. *See* Mich. Comp. Laws § 24.305; *Walen*, 505 N.W.2d at 521 (noting that major misconduct "hearings are subject to," among other things, § 24.305). Further, there was no need for Peterson to be entitled to *legal* briefing, as opposed to the *factual* briefing to which he was entitled, because the only contested issue was one of fact. And while Peterson could not personally cross-examine the witnesses against him, he was entitled to submit questions for the hearing officer to ask adverse witnesses and to have any refusal by the hearing officer included in the record. *See* Mich. Comp. Laws § 791.252(e). This accommodation seems, in the prison context, sufficient to preserve fairness without creating a forum for prisoners to abuse witnesses or otherwise waste government time. *See, e.g.*, *Couch*, 483 N.W.2d at 686 (treating the accommodation as reasonable).

That said, Peterson did state some concerns to the agency about how the hearing *actually* proceeded (as opposed to how he was *entitled by law* to have it proceed), such as the alleged bias of the hearing officer, Peterson's inability to view the security tape,

and the hearing officer's decision not to ask some of the questions that Peterson submitted. But this is not the forum in which to first bring those complaints to federal court. After his failed administrative appeal, Peterson was entitled to raise those concerns in an appeal to state court and, if the state courts had failed to resolve his concerns, to appeal to the U.S. Supreme Court. *See, e.g.*, *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985) (resolving a dispute that started with a state prison agency's determination, was then appealed to state court, later decided by the state's highest court, and finally appealed to the U.S. Supreme Court). Indeed, had Peterson, for instance, thought the video recording dispositive, appealing to state court would have automatically made the video a part of the record. *See* Mich. Comp. Laws § 791.253(2). Nor can the results of his failure to use those procedures be considered proof that the procedures themselves were somehow inadequate. *See Herrera*, 680 F.3d at 550 (noting that a party's "failure to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy" (internal quotation marks and brackets omitted)).

The only concern that gives us pause is that Michigan courts have often found that the presence of counsel is supporting evidence that a party has had a full and fair chance to litigate an issue. *See, e.g.*, *Monat*, 677 N.W.2d at 847; *Nummer*, 533 N.W.2d at 253. And Peterson did not have counsel. But we do not think that this lack either is categorically dispositive or specifically requires finding that Peterson did not have full-and-fair chance here.

If counsel's participation were a categorical necessity, then it would have been listed among *Monat*'s thirteen factors. It was not. Indeed, although *Monat* and *Nummer* found the presence of counsel as *supporting* evidence on the full-and-fair question, they did not begin to suggest that it was *necessary* evidence. Further, nothing in Michigan's Administrative Procedure Act or its laws covering major misconduct hearing procedures requires either that counsel *must* be present or that counsel *cannot* be present at a hearing. Nor do the laws governing the judicial deference given on direct appeal adjust the level of deference based on whether a party was represented by counsel. Finally, a

categorical rule could have perverse consequences: a party who went to the effort and expense of hiring counsel to litigate a claim would face issue preclusion in a collateral proceeding, while a party who chose not to hire counsel could avoid preclusion and have his case live to be litigated another day before a different court.

Nor do we consider the absence of counsel problematic for Peterson's case. The sole factual issue was a very simple one and it turned on the hearing officer's judgment of Johnson's and Peterson's credibility and on his review of the video recording. An attorney would likely have had only negligible influence on such a factual judgment.

Thus, we conclude that Peterson had a full and fair opportunity to litigate whether he grabbed Johnson's hand or Johnson grabbed his.

The last factor in deciding whether to give preclusive effect to the hand-grabbing determination is whether the Michigan legislature clearly intended to make the hearing officer's determination final in the absence of appeal. *Nummer*, 553 N.W.2d at 253. Three factors indicate that the legislature did so intend. First, the statute repeatedly refers to the hearing officer's un-appealed determination as a "final decision" or "final disposition." *See, e.g.*, Mich. Comp. Laws §§ 791.252(k) (referring to the hearing officer's determination as "final" three times), 791.253(2) (once), 791.254(3) (once), 791.255(1) (twice). Second, where, as here, there is an "absence of legislative intent to the contrary, the applicability of principles of preclusion is presumed." *Dearborn Heights Sch. Dist. No. 7 v. Wayne Co. MEA/NEA*, 592 N.W.2d 408, 413 (Mich. Ct. App. 1998). Third, where, as here, "the only procedure available to a party aggrieved by a final decision of the [agency] is direct review by the courts," that is evidence that the agency's decision "is clearly intended to be a final decision on the merits" because "the appeal process, by its very nature, does not contemplate a new, original action." *Id.* (also noting that holding otherwise runs the risk "of having two different panels issue two potentially opposing opinions concerning one factual issue").

Thus, we conclude that Michigan courts would grant preclusive effect to the hearing officer's finding that Peterson grabbed Johnson's hand.

## C

Sometimes explaining what something is *not* goes a long way toward showing what it is. And because this is an issue of first impression, we wish to make perfectly clear that our preclusion analysis is distinct from two other parallel lines of law.

First, we are not suggesting that the hearing officer's *legal* conclusion that Peterson committed assault and battery has any bearing on whether Johnson treated Peterson with excessive force. It does not. As this Court explained in *Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008), an assault-and-battery conviction is analytically distinct from an excessive force claim; a prisoner can commit the former and simultaneously be the victim of a guard's excessive force. Rather, what we hold is that the hearing officer's *factual* finding that Peterson was the one who grabbed Johnson's hand precludes a contrary finding in federal court. That being true, the question then becomes whether, on the facts of this case, a reasonable jury could find that Johnson's brief struggle to free his hand and then return Peterson to his cell was a malicious and sadistic use of excessive force. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (recognizing that summary judgment is appropriate if "the evidence is such that a reasonable jury could [not] return a verdict for the plaintiff" (internal quotation marks omitted)). We find that it could not and accordingly affirm the district court.[1]

Further, our holding includes only *factual* issues decided by a state agency. Both *Elliott* and the state cases on which we rely were explicit that the preclusive effect they recognized concerned purely factual determinations, and that limitation makes good sense. Had the hearing officer purported to make a *legal* conclusion regarding

---

[1]The dissent believes that even if the factual question of who grabbed whose hand is not subject to further dispute, sufficient issues of material fact still remain that preclude summary judgment. However, we hold that with the hand-grabbing question having been conclusively settled by the hearing officer's factual finding, Peterson's remaining factual allegations are insufficient to present an excessive force claim that can survive summary judgment.

Peterson's federal constitutional rights, our analysis would necessarily be different and we could not likely be so deferential.[2]

Second, we are not relying on the rule from *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), that rejects a prisoner's § 1983 claim where vindicating it would necessarily imply the invalidity of a prison agency's disciplinary determination. That rule applies only where a prisoner's § 1983 challenge "threatens . . . his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). Peterson's challenge threatens neither. He does not seek relief for any effect that the assault-and-battery conviction may have had on good-time credits nor does anything in the record show that good-time credits were implicated, and there is no indication that his underlying murder conviction or sentence is in any way affected by his claim. Instead, Peterson seeks solely financial damages for Johnson's alleged excessive force. Thus, the *Heck/Edwards* rule has no relevance here.

## IV

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment against Peterson.

---

[2]We do, however, note in response to the dissent that a *factual finding* can have preclusive effect regardless of what particular *legal claim* it is being used to support. Thus, the fact that the factual finding here was originally made in the context of one legal claim (i.e., assault and battery) does not negate the preclusive effect of that same factual finding in the context of other legal claims (e.g., excessive force).

———————————

**DISSENT**

———————————

Bernice B. Donald, Circuit Judge.  I agree with the majority that the district court properly granted summary judgment to the Defendants on Peterson's First Amendment Retaliation claim and on his Eleventh Amendment claim.  I take exception, however, to the majority's conclusion that the district court reached the correct result, albeit for the wrong reasons, on Peterson's Eighth Amendment claim.  Because I believe the majority incorrectly finds that this case hinges on who put whose hand in the cell, and because I would find that there remains a genuine issue of material fact as to excessive force, I respectfully dissent.

It is true that the hearing officer at Peterson's misconduct hearing made factual findings related to the incident at issue.  It is also true that, in certain circumstances, we are required to give preclusive effect to an agency's factual findings in a proceeding collateral to a § 1983 action.  *University of Tennessee v. Elliot*, 478 U.S. 788, 799 (1986).  This principle, however, applies only where the claimant is attempting to relitigate the evidentiary questions raised at the prior state proceeding.  *Id.* at 797-98. It is my view that, although premised on the same set of facts, Peterson has brought a claim distinct from that determined by the hearing officer, and thus, the hearing officer's finding, while relevant, is not dispositive.

Peterson's misconduct hearing was conducted to resolve Johnson's accusation of assault and battery; although related, this was not a hearing to determine if Johnson and Lindy used excessive force on Peterson.  The distinction is critical to the scope of the preclusive effect afforded to the state proceedings.  I do not take issue with the majority's determination that Peterson's misconduct hearing was a state agency acting in a judicial capacity within the meaning of *Elliot*.  My issue lies with its determination that the hearing officer's finding precludes Peterson from bringing his Eighth Amendment claim for excessive force.

The majority opinion fails to consider that Peterson's complaint alleged facts in addition to Johnson putting Peterson's hand in the cell. The pleadings list other incidents as contributing to the allegations of excessive force, including Johnson and Lindy throwing Peterson to the floor, Johnson driving his knee into Peterson's back, as well as an allegation that the handcuffs were too tight–resulting in nerve pain. Thus, regardless of the hearing officer's finding that Peterson put Johnson's hand in the cell door, the officers could still be found to have used excessive force in their attempts to subdue him. Moreover, a finding that Peterson was guilty of assault on Johnson does not necessarily preclude an excessive force claim– "[w]here there is room for the facts alleged by the plaintiff and the facts essential to the judgment of the state agency to peacefully co-exist, the § 1983 must be allowed to go forward." *Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008) (internal citations and quotations omitted); *see also Huey v. Stine*, 230 F.3d 226, 230 (6th Cir. 2000) (finding that "the question of the degree of force used by a police or corrections officer is analytically distinct from the question whether the plaintiff violated the law") (citation omitted), *abrogated on other grounds by Muhammad v. Close*, 540 U.S. 749 (2004).

The Eighth Amendment's prohibition on cruel and unusual punishment extends to the unnecessary and wanton infliction of pain upon prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). To prevail on the Defendants' motion, Peterson must show that, objectively, the pain was sufficiently serious and, subjectively, that "the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

While the majority recounts that Peterson's injuries were "fairly minor and that he suffered no visible physical injuries[,]" the objective component can be satisfied where "the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. The Supreme Court made clear that this element is to be judged by the nature of the force, not the extent of the injury. *Wilkins*, 130 S.Ct. at 1178. As to the subjective component, Peterson averred that he did not resist officers Johnson and Lindy when they pulled him

out of the cell. In fact, if we give preclusive effect to the finding that Peterson was the initial aggressor, it is entirely possible that Johnson and Lindy acted maliciously or sadistically in response to Peterson's provocation. *See Hudson*, 503 U.S. at 7.

Other than the "hand-in-cell" incident, Johnson and Lindy do not dispute Peterson's version of the events that took place. Even if we give preclusive effect to the hearing officer's finding that Peterson pulled Johnson's hand into the cell, the law requires us, on review of a motion for summary judgment, to view the evidence in the light most favorable to Peterson where there is a dispute as to Johnson's and Lindy's malicious or sadistic intent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In conclusion, I believe that this case presents an instance in which granting preclusive effect to the hearing officer's finding of fact as it relates to Peterson's assault on Officer Johnson is not dispositive of Peterson's subsequent § 1983 excessive force claim. The majority's determination that this fact is indeed dispositive is the sole reason it would not succumb to our standard of review and reverse the judgment below. Because I would find differently and believe there remains a genuine issue of material fact regarding whether the degree of force used against Peterson was excessive, I would reverse the district court's grant of summary judgment to the Defendants.