RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CHARLES J. SELBY,

               *Plaintiff-Appellant*,

    *v.*

PATRICIA L. CARUSO, former Director of the
Michigan Department of Corrections, JAMES
MACMEEKIN, former Regional Prison
Administrator, JERI-ANN SHERRY, Regional
Prison Administrator, and GERALD
HOFBAUER, former Warden, Marquette
Branch Prison, in their personal and official
capacities,

               *Defendants-Appellees.*

No. 13-1248

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 2:09-cv-00152—R. Allan Edgar, District Judge.

Decided and Filed: October 31, 2013

Before: GILMAN, KETHLEDGE, and STRANCH, Circuit Judges.

_____

## COUNSEL
_____

**ON BRIEF:** Michael R. Dean, OFFICE OF THE MICHIGAN ATTORNEY
GENERAL, Lansing, Michigan, for Appellees. Charles Selby, Marquette, Michigan, pro
se.

_____

## OPINION
_____

JANE B. STRANCH, Circuit Judge. Charles J. Selby, a Michigan prisoner
proceeding *pro se*, appeals the district court's grant of summary judgment for the
defendants in this civil rights case filed under 42 U.S.C. § 1983. He sued Michigan
Department of Corrections officials for violating his due process rights, alleging that

they confined him in administrative segregation for approximately thirteen years without meaningful review. He also alleged that the defendants violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, by denying him access to Christian worship services while he was confined in administrative segregation. For the reasons explained below, we AFFIRM in part and REVERSE in part the grant of summary judgment in favor of the defendants and REMAND for trial on the due process claim.

## I. FACTS AND PROCEDURAL HISTORY

Selby is serving a life sentence for murder, a two-year sentence for being a felon in possession of a firearm, and a two-to-five-year sentence for attempted escape from prison. Michigan prison authorities confined Selby in administrative segregation for nearly thirteen years based on a determination that he posed a serious escape risk. Selby served most of those years in the Marquette Branch Prison (MBP), a maximum security facility. Correction officials released Selby into the general prison population at MBP in January 2011, approximately eighteen months after Selby filed this § 1983 suit in July 2009.

For summary judgment purposes, we accept as true the allegations of Selby's verified complaint and his affidavit, including his description of the conditions of his confinement in administrative segregation. Selby attests that he was locked in his cell 23 to 24 hours a day with no direct contact or interaction with other prisoners, although he could speak to them through the barred door of his cell. He was not allowed a daily shower. His food portions were smaller and he was not allowed to obtain food or beverages from the commissary. He did not receive educational programming. He could not possess a battery-operated radio, cassette-tape player, MP3 player, hobby items, or many other personal items. He lacked direct access to health care, the library, the chapel, and the gym. He received very limited yard time, and even during those periods he was locked in a cage slightly larger than a cell. In winter he could not walk out into the yard because he did not have a coat. Selby had no access to a telephone except to speak with an attorney or receive a call concerning a death in his family.

Visiting hours were reduced and mail privileges restricted. The lights remained on in his unit twenty-four hours a day, seven days a week. Selby was confined with mentally ill prisoners who screamed and banged metal lids against metal footlockers and walls. He was not allowed to purchase ear plugs from the commissary to dull the noise. Many of the prisoners smeared food and feces on themselves and their cell walls and refused to shower. Because there was little ventilation in the unit, Selby was forced to smell the stench until extraction teams sprayed chemical agents to take control of the prisoners and remove them from the unit so they could be showered and their cells could be cleaned. Selby was forced to breathe the chemical fumes and smoke from cell fires set by other prisoners. By his seventh year in administrative segregation, Selby developed respiratory problems, frequent panic attacks, confusion, concentration and memory problems, infections, insomnia, paranoia, and hallucinations. He experienced despair, depression, and thoughts of suicide.

Prison staff and administrators completed monthly Administrative Segregation Interview Reports about Selby's confinement in administrative segregation between 1998 and 2011. Selby characterizes these reports as a "sham" because the outcome of the review process was preordained by a "hold" placed on him by the Correctional Facilities Administrator (CFA). Selby attests that he was never informed why he was subject to a "CFA hold," what prison rule or policy he violated to warrant the hold, or how he could obtain removal of the hold. Although the defendants deny that a CFA hold impacted their decision to continue Selby's confinement in administrative segregation, some of the monthly review reports state that Selby was subject to a CFA hold.

The corrections department policy on administration segregation that is included in the record, PD 04.05.120, bears an effective date of June 29, 2009. Any previous version of this policy that may have applied during most of Selby's confinement in administrative segregation is not available to us for review.

The 2009 segregation policy indicates that the Warden and the Regional Prison Administrator (RPA) acting together had the authority to release Selby from administrative segregation. But Selby avers that Warden Hofbauer and RFA McMeekin,

and later RFA Sherry, told him during periodic interviews that they lacked authority to order his release into the general prison population and they would not release him even if they had the authority to act. Selby further avers that Warden Hofbauer and the RPAs told him during periodic interviews that they did not have to consider him for release; they were required only to conduct the reviews. Warden Hofbauer denies that any such statements were made to Selby. The record confirms that RFA Sherry sought direct approval from the CFA before Selby was released from administrative segregation into the general prison population in January 2011.

It is not clear what effect Selby's conduct, other than his escape history prior to 2003, had on his continued confinement in administrative segregation. He received a major misconduct report in July 2001 for possessing blood pressure pills that did not belong to him, but this misconduct was not mentioned on the August 2, 2001 Administrative Segregation Interview Report. Instead, the form noted that Selby's "Behavior and Conformity to Rules" was "No Problem."

Selby received another major misconduct report in late January 2002 for possession of dangerous contraband—detailed instructions on how to start a car without a key—for which he lost privileges for a period of thirty days, but the Administrative Segregation Interview Report issued five days later on February 14, 2002, again reported that his "Behavior and Conformity to Rules" was "No Problem." The report commented that Selby "must stop [receiving] misconducts and start to follow unit program."

Selby did not receive another major misconduct report until May 2005 when he was found in possession of two razor blades, half of a nail clipper, and a piece of thin metal two inches long. The Administrative Segregation Interview Report completed on June 3, 2005, specifically mentioned this major misconduct citation, but the report nonetheless characterized Selby's behavior as a "Marginal Problem."

The last major misconduct violation occurred approximately five years later on February 26, 2010, when Selby possessed a pen with a piece of metal attached to one end. After a hearing on this violation held in mid-March, Selby lost his privileges for a period of fourteen days. This incident was mentioned in the April 2010 "Segregation

Behavior Review," but less than a year later, Selby was released into the general prison population. The monthly segregation review reports repeatedly indicated that Selby's attitude and social adjustment were "good," he maintained good hygiene and cell cleanliness, he generally followed the rules, and he worked at a job painting segregation cells.

In March 2010, Selby qualified for a lower security classification under the corrections department's "Security Classification Screen – Review" form. Nonetheless, prison officials departed upward from the suggested security classification level and continued to hold Selby in administrative segregation because his "[o]verall institutional history warrants [a] security level increase."

The record does not disclose any significant event in late 2010 or early 2011 that convinced prison officials to release Selby from administrative segregation. The monthly reports completed just before the release are virtually indistinguishable from the reports filled out in previous years. The forms repeatedly documented prison officials' persistent "low" trust in Selby's ability to conform to prison rules at a less restrictive security classification level.

On January 18, 2011, the Security Classification Committee requested approval to release Selby from administrative segregation. MBP's Acting Warden, James Alexander, sent a memorandum to RPA Sherry on January 25, 2011, recommending Selby's release. RPA Sherry obtained the concurrence of the CPA and Selby was released to general prison population with the caveat that he remain at MBP at security level V.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *Peterson v. Johnson*, 714 F.3d 905, 910 (6th Cir. 2013). "Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* We view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the non-moving party, and we do not weigh the

evidence or make credibility determinations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support Selby's case.  *Peterson*, 714 F.3d at 910.  If Selby can demonstrate the existence of a genuine issue of material fact for trial, then summary judgment may not be granted in favor of the defendants.  *See id.*

## III.  ANALYSIS

### A.  Due process claim

Selby possesses a cognizable liberty interest in freedom from restraint that "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  We recently ruled that confinement in administrative segregation for eight years gave rise to a liberty interest, *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012), and we have no difficulty holding that under the facts of this case thirteen years gives rise to a liberty interest.  *Cf. Heard v. Caruso*, 351 F. App'x 1, 8–9 (6th Cir. 2009) (reversing summary judgment for defendants where genuine issue of material fact existed on whether indefinite confinement to administrative segregation gave rise to a liberty interest).

The pivotal question is whether a jury must decide if Selby received the process due to him.  We know from longstanding Supreme Court jurisprudence that prison officials must engage in some sort of periodic review while an inmate is confined in administrative segregation, and that the officials' decision to continue such confinement must be supported by "some evidence."  *See Harris*, 465 F. App'x at 484 (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), and *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).  In *Harris*, due process was satisfied as a matter of law because the evidence confirmed that the inmate "received *meaningful*, periodic reviews" and the decision to continue indefinite confinement in administrative segregation was supported by "some evidence."  *Harris*, 465 F. App'x at 485 (emphasis added).  That is not the situation here. Genuine issues of material fact exist on this record concerning whether Selby received meaningful periodic reviews and whether the prison officials' decision to continue

Selby's confinement in administrative segregation for nearly thirteen years was supported by "some evidence."

Without question, Selby presented a very serious security risk when he was placed in administrative segregation. Even Selby admits that. Our task, however, is to determine whether the complete factual record is so one-sided that the defendants are entitled to summary judgment on the due process claim. We conclude that it is not. Both sides submitted conflicting affidavits about what was said and done during the thirteen years of periodic reviews. Some of the documents support Selby's assertion that he was subject to a CFA hold, leading to a reasonable inference that the periodic reviews conducted by lower-level prison staff were perfunctory and meaningless, as Selby argues. Selby also argues that, once the CPA denies a prisoner release from segregation, the prisoner must remain in segregation a minimum of an additional six months, rendering the monthly reviews during that time a sham. On the other hand, the CFA hold may have had nothing to do with Selby's administrative segregation status, as the defendants contend. There are other material disputes of fact, including whether Selby's four misconduct reports over a period of ten years supplied support for the decision to retain him in administrative segregation, whether the decision to override his qualification for a lower security classification in 2010 was warranted, and whether the aging escape history justified continued restraint in administrative segregation for a period of thirteen years.

The defendants argue they are entitled to summary judgment on this claim because they are protected by qualified immunity. To overcome this defense, Selby must show (1) the violation of a constitutional right and (2) that the right was clearly established at the time of the violation. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). "When no facts are in dispute, whether an official receives qualified immunity is a question of law." *Id.* But in this case, as in *Dominguez*, facts *are* in dispute, precluding summary judgment for the defendants. *Id.* at 550–52.

"Whether a given process is meaningful for the purposes of the Due Process Clause is a question of fact." *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). In

*Williams*, where an Arkansas inmate was held in administrative segregation for fourteen years, the Eighth Circuit reversed a grant of summary judgment for the defendants on the ground that "there remains an unresolved fact issue on this record as to whether Williams actually received meaningful reviews, rather than sham reviews, as he contends." *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008). Similarly, this record contains unresolved disputes of fact.

Furthermore, since *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), prison officials have been on notice that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." Thus, Selby may be able to show that a reasonable prison official should have known that he could not be confined in administrative segregation for pretextual reasons. *See Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)(noting that the contours of a constitutional right must be sufficiently clear that a reasonable governmental official would understand that what he is doing violates that right).

Because Selby satisfies both requirements for overcoming the qualified immunity defense, summary judgment is not appropriate. *See Dominguez*, 555 F.3d at 550–52 (holding that a prisoner's right to adequate medical care was clearly established and genuine issues of material fact regarding the violation of that right precluded summary judgment). To prove liability under § 1983 at trial, Selby must demonstrate by a preponderance of the evidence that each defendant, acting with intent, deliberate indifference, or gross negligence, deprived him of meaningful periodic reviews during his confinement in administrative segregation. *See Howard v. Grinage*, 82 F.3d 1343, 1350–52 (6th Cir. 1996).

**B. First Amendment and RLUIPA claims**

We turn next to Selby's claims concerning his religious freedom. Selby alleges in his complaint that he is a devout Christian who was deprived of the right to practice his religious beliefs through participation in group worship services while he was confined in administrative segregation. In the appellate briefs, he presented argument

only on his RLUIPA claim, so we deem the First Amendment claim abandoned.  *See Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010).

Selby's requests for declaratory and injunctive relief under RLUIPA became moot when he was released into the general prison population at MBP.  *See Colvin*, 605 F.3d at 289; *Berryman v. Granholm*, 343 F. App'x 1, 4–5 (6th Cir. 2009).  In addition, Selby cannot state a claim against the State of Michigan for damages under RLUIPA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1658–59 (2011); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009).  Finally, our court has not ruled on whether RLUIPA authorizes a prisoner to pursue damages against prison officials who are sued in their individual capacities, *see Heard v. Caruso*, 351 F. App'x 1, 13 n.5 (6th Cir. 2009), but we need not resolve that issue here.  Having carefully reviewed the RLUIPA claim, we agree with the district court's reasons for granting summary judgment to the defendants on that claim.

## IV.  CONCLUSION

For the reasons explained, we AFFIRM in part and REVERSE in part the grant of summary judgment in favor of the defendants.  We REMAND the case for trial on Selby's due process claim.